# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Consolidated Reports and Return | : | |
| By the Tax Claims Bureau of | : | |
| Northumberland County of | : | |
| Properties Exposed for Scheduled | : | No. 752 C.D. 2014 |
| Sale September 19, 2012 under | : | |
| the Real Estate Tax Sale Law of | : | Submitted: September 16, 2015 |
| July 7, 1947, Act Number 542 | : | |
| | : | |
| Appeal of: Shari Neff | : | |

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
                HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge[2]
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**                                **FILED:  January 21, 2016**

Shari Neff (Objector) appeals an April 3, 2014 Order of the Northumberland

County Court of Common Pleas (trial court) overruling Objector's Objections and

Exceptions to the Northumberland County Tax Claim Bureau's (Bureau) Petition

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

for Confirmation of the upset tax sale of Objector's home and confirming the tax sale absolutely.[3]  On appeal, Objector argues that the Bureau did not comply with multiple notice provisions of the Real Estate Tax Sale Law[4] (Law) and that the trial court abused its discretion by deferring its fact finding responsibility to counsel for the successful bidders at the upset tax sale.  Because Objector received actual notice of the tax sale, the Bureau properly obtained a waiver of the personal service requirement of the Law, and the trial court acted within its discretion, we affirm.

## I.  Background

At issue in this appeal is the upset tax sale of Objector's home at 145 Leaf Lane, Sunbury, Pennsylvania (Property) to satisfy a 2011 tax delinquency.  The following relevant facts are not in dispute.  At the time of the sale, Objector was the co-owner of the Property with her then husband, Nicholas Neff.[5]  Objector has lived at the Property since 1987 and currently lives at the home with her two daughters, ages twenty-four and fifteen, and her twenty-year-old son.  Objector's husband vacated the Property in May 2008, but the couple continued to pay equal shares of the taxes for tax years 2008-2010.  For several years prior to tax year 2011, Objector and her husband entered into payment agreements with the Bureau.  Objector entered into such an agreement with the Bureau on September 30, 2011 for tax years prior to 2011 and defaulted on said agreement on April 10, 2012.

---

[3] The caption in this matter, which was developed by Objector at her initial filing in the trial court, refers to a September 19, 2012 tax sale.  However, the record in this matter confirms that Objector's home was exposed to a tax sale on September 18, 2013, not September 19, 2012.

[4] Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§ 5860.101-5860.803.

[5] Objector and Mr. Neff have since divorced.

2

(Purchaser's Hr'g Ex. 1; Hr'g Tr. at 31-32, R.R. at 58a-59a.) Because of the default, pursuant to Section 603 of the Law, Objector was prohibited from entering into a new agreement for three years.[6] Objector and her husband saved the home from being subject to a tax sale in previous tax years by meeting at the Bureau's office and paying equal shares of the delinquent taxes.

According to Objector, she and her husband were going through a contentious divorce in the summer of 2013 and could not reach an agreement for splitting the delinquent property taxes for tax year 2011. Objector testified that she had the money to pay the delinquent taxes in full, but did not want to make the payment without a contribution from her ex-husband.

The Bureau sent notice that the Property was scheduled to be sold at a September 18, 2013 upset tax sale via certified mail on June 11, 2013 to both Objector and her husband at their respective addresses. Objector's husband signed for the notice on June 17, 2013, but the notice sent via certified mail to Objector was returned unclaimed. (Certified Mail Return Receipt for Nicholas Neff, Bureau's Hr'g Ex. A, R.R. at 110a; Certified Mail Return Receipt for Shari Neff (Unclaimed), Bureau's Hr'g Ex. B, R.R. at 107a.) The Bureau then ostensibly mailed a second notice to Objector on September 4, 2013. (Ten-Day Sale Notice, Bureau's Ex. F, R.R. at 143a-45a.) There is a dispute over whether the evidence

---

[6] 72 P.S. § 5860.603. Section 603 of the Law states, in relevant part: "If a party to an instalment agreement defaults on the agreement, the bureau shall not enter into a new instalment agreement with that person within three (3) years of the default." Id.

3

presented supports a finding that the ten-day notice was sent via certified mail, through first-class mail, or at all.

The Bureau published notices of the tax sale on August 17, 2013 in the *Shamokin News Item*, *Sunbury Daily Item,* the *Milton Standard Journal*, and the *Northumberland Legal Journal*. (Proof of Publication, Bureau Hr'g Ex. D, R.R. at 114a-31a.) Additionally, the Property was posted three separate times by Valerie McDowell of Palmetto Posting, the Bureau's designee for posting tax sale notices. (Posting Report, Bureau's Ex. C, R.R. at 112a.) Ms. McDowell, on behalf of Palmetto Posting, served the dual role of both posting the Property and attempting to personally serve Objector with notice of the tax sale. Palmetto Posting is required by contract with the Bureau to attempt personal service of notice on property owners three times: once between eight a.m. and noon; once between noon and four p.m.; and once between four p.m. and eight p.m. (Hr'g Tr. at 39, R.R. at 66a.) Ms. McDowell attempted to personally serve Objector with notice on three occasions: August 5, 2013 at 1:21 p.m.; August 8, 2013 at 4:13 p.m.; and August 9, 2013 at 9:19 a.m. (Posting Report, Bureau's Ex. C, R.R. at 112a.) Objector was not at home at any of these times and Ms. McDowell posted a fluorescent pink notice on the steps leading to the front door of the Property each of the three times she attempted to personally serve Objector with notice. Each time she returned to the Property, the prior notice she had posted on the steps was no longer there. (Hr'g Tr. at 36, R.R. at 63a.)

On August 20, 2013, the Bureau filed a "Petition to Waive Requirement of Personal Service of Notice of Tax Sale" (Waiver Petition) with the trial court

4

seeking to waive personal service of notice of the September 18, 2013 upset tax sale to Objector and ninety-six other owner-occupants of property scheduled to have their homes sold at the upset tax sale. The Waiver Petition averred that the Bureau "attempted to personally serve notice by Palmetto Posting Co[mpany], the server designee, all owners of owner-occupied property subject to the September 18, 2013 Upset Sale" and that "at least three (3) separate attempts have been made by the server designee on each property." (Waiver Petition ¶¶ 3, 5, R.R. at 6a-7a.) The Waiver Petition also avers that all other notice requirements of the Law were accomplished for each property. (Waiver Petition ¶ 6, R.R. 6a.) The stated justification for the waiver was that "[a] denial of this request would result in the . . . Bureau's inability to offer these properties for public tax sale on September 18, 2013." (Waiver Petition ¶ 8, R.R. 7a.) Attached to the Waiver Petition was a document showing that personal service was attempted for the Property on August 5, 2013 at 1:21 p.m.; August 8, 2013 at 4:13 p.m.; and August 9, 2013 at 9:19 a.m. (Waiver Petition, Attachment, R.R. at 11a.) The trial court granted the Bureau's Waiver Petition on the same day it was filed, August 20, 2013. (Trial Ct. Order, August 20, 2013, R.R. at 12a.)

The Bureau sold the Property on September 18, 2013 as scheduled. The winning bidder at the sale was Daniel Lewis, who later assigned his rights as the successful bidder to both himself and Guy Leroy (together, Purchasers).

5

On October 16, 2013, Objector timely filed Objections and Exceptions to the upset tax sale of the Property.[7] Therein, Objector alleges that the Bureau sold the Property at the upset tax sale in violation of Objector's due process rights and the notice requirements of the Law. (Objections and Exceptions ¶¶ 4-5, R.R. at 22a-24a.)

A hearing was held on December 19, 2013 at which Janice Nestico, Director of the Bureau,[8] Objector,[9] and Ms. McDowell[10] testified. Objector testified that she had no notice of the September 18, 2013 tax sale. She did not recall receiving notice by mail or personal service. Objector testified that she did not learn of the sale until she was informed of the sale by her daughter at 11:00 a.m. on the date of the sale. Objector acknowledged that she took down a fluorescent pink poster posted on her house, presumably the one posted on August 9, 2013. However, Objector testified that she read the poster only until she saw the date of August 17, 2013, which Objector understood to be the date by which her 2011 taxes had to be paid.[11] Objector did not recall reading the section of the notice that listed a date or location of the pending upset tax sale.

---

[7] Purchasers petitioned the trial court to intervene in the matter on October 28, 2013, which was granted without objection.

[8] Ms. Nestico's testimony at the December 19, 2013 hearing is found at pages 36a-61a of the reproduced record.

[9] Objector's testimony at the December 19, 2013 hearing is found at pages 71a-94a of the reproduced record.

[10] Ms. McDowell's testimony at the December 19, 2013 hearing is found at pages 61a-70a of the reproduced record.

*(Continued…)*

6

Upon review of the evidence, the trial court issued an Order on April 3, 2014, overruling Objector's Objections and Exceptions and confirming the sale absolutely. The trial court explained:

> Having reviewed the memoranda provided[,] this Court recollects the testimony at the hearing on the objections in accordance with the testimonial assertions made by the Purchaser[s] in their memorandum. This Court believes that a forward-looking review of <u>Horton v. Washington County Tax Claim Bureau, Petition of Lewis</u>, 44 A.3d 710 (Pa. Cmwlth. 2012) and the corresponding cases provided in the Purchaser's memorandum demonstrate that the due process requirements of the notice provisions are sacrosanct. Understanding this, the Court reviewed the record and determined that on several occasions during the hearing, the Objector testified to her "actual notice" of the impending tax sale. The statutory provisions were substantially complied with and the testimony of the Objector was credible.

(Trial Ct. Order, April 3, 2014, n.1.) This appeal followed.[12]

## II. Objector's Appeal

On appeal, Objector first argues that the upset tax sale of the Property must be set aside because the Bureau did not strictly comply with all notice requirements of the Law and due process. Objector identifies four notice-related defects in the

---

[11] The posted notice stated that the notice of the tax sale will be published in the *Shamokin News Item*, *Sunbury Daily Item*, and *Milton Standard* plus other county publications on August 17, 2013. (Posted Notice, R.R. at 113a.) The notice further states that the delinquency of $3,421.90 must be paid on August 31, 2013 and that the Bureau will expose the Property to a public sale on September 18, 2013. (Posted Notice, R.R. at 113a.)

[12] Our review in tax sale cases "is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision with a lack of supporting evidence." <u>Rice v. Compro Distributing, Inc.</u>, 901 A.2d 570, 574 (Pa. Cmwlth. 2006).

7

trial court's Order. In addition to the defective notice, Objector argues that the trial court abused its discretion by relying on factual arguments put forward by Purchasers in their memorandum of law rather than making findings of fact based on the record. We shall address Objector's four notice-related arguments first and then proceed to Objector's argument with regard to judicial discretion.

## A. Notice Requirements

A property owner's right to notice "prior to commencing with an upset tax sale [is] established pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by the Law." Rice v. Compro Distributing, Inc., 901 A.2d 570, 574 (Pa. Cmwlth. 2006). The United States Supreme Court has held that due process is implicated in any taking of property for the collection of taxes, stating:

> [p]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.

Jones v. Flowers, 547 U.S. 220, 226 (2006). Due process is satisfied when the Bureau, before commencing with a tax sale, "provide[s] 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Id. (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

8

The notice provisions of the Law are designed to "guard against deprivation of property without due process." Donofrio v. Northampton County Tax Claim Bureau, 811 A.2d 1120, 1122 (Pa. Cmwlth. 2002). Because the government actor attempting to take property bears the constitutional duty to provide notice prior to a tax sale, our inquiry into whether adequate notice was provided must focus "not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the Bureau comply with the requirements of the [Law]." Smith v. Tax Claim Bureau of Pike County, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003). However, even technical compliance with the statute may not always satisfy the demands of due process since the "Law states the *minimum effort* to be done by a tax claim bureau." In re Consolidated Return of Tax Claim Bureau of County of Beaver from August 16, 2011 Upset Sale for Delinquent Taxes, 105 A.3d 76, 83 (Pa. Cmwlth. 2014) (emphasis added); see also Geier v. Tax Claim Bureau of Schuylkill County, 588 A.2d 480, 483 (Pa. 1991) (holding that "even though the Bureau technically complied with the notice requirements of the tax sale statute, the Bureau failed to satisfy the demands of due process in conducting the sale"). Due process requires that the "practicalities and peculiarities of the case" are considered and given their "due regard." Mullane, 339 U.S. at 314.

The notice requirements of the Law relevant to this case are set forth in Sections 602 and 601(a)(3) of the Law. 72 P.S. § 5860.602; 72 P.S. § 5860.601(a)(3). In all tax sale cases, the tax claim bureau "has the burden of proving compliance with the statutory notice provisions." Krawec v. Carbon County Tax Claim Bureau, 842 A.2d 520, 523 (Pa. Cmwlth. 2004). Section 602 requires three different forms of notice to property owners prior to an upset tax

sale: publication, posting, and mail.[13] "If any of the three types of notice is defective, the tax sale is void." Gladstone v. Federal National Mortgage Association, 819 A.2d 171, 173 (Pa. Cmwlth. 2003). Notwithstanding our mandate to strictly construe the notice provisions of the law, the notice requirements of Section 602 of the Law are not an end in themselves, but are rather intended to ensure a property owner receives actual notice that his or her property is about to be sold due to a tax delinquency. Donofrio, 811 A.2d at 1122. However, strict compliance with the notice requirements of Section 602 is not required when the Bureau proves that a property owner received actual notice of a pending tax sale. Sabbeth v. Tax Claim Bureau of Fulton County, 714 A.2d 514, 517 (Pa. Cmwlth. 1998).

---

[13] Section 602(a) requires that notice be published in two newspapers of general circulation and one "legal journal, if any, designated by the court for publication of legal notices" at least thirty days prior to the scheduled sale. 72 P.S. § 5860.602(a). Section 602(e)(3) of the Law, 72 P.S. § 5860.602(e)(3), requires that the property be posted at least ten days prior to the sale. The posting of the property must be done in a manner that is "reasonable and likely to inform the taxpayer, as well as the public at large, of an intended real property sale." In Re: Upset Sale Tax Claim Bureau McKean County on September 10, 2007, 965 A.2d 1244, 1247 (Pa. Cmwlth. 2009) (internal quotations omitted). Third, Section 602(e) requires notice to be sent to the owner via the mail. To meet this requirement the Bureau must, at least thirty days prior to the date of the sale, send notice by "certified mail, restricted delivery, return receipt requested, postage prepaid." 72 P.S. § 5860.602(e)(1). If return receipt is not received from each owner

> then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes.

72 P.S. § 5860.602(e)(2).

In addition to the notice requirements of Section 602 of the Law, if the property is, as here, occupied by the owner, Section 601(a)(3) of the Law requires that each owner-occupant receive additional notice of a tax sale by personal service. Section 601(a)(3) provides:

> No owner-occupied property may be sold unless the bureau has given the owner[-]occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. The sheriff or his deputy shall make a return of service to the bureau, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the bureau written proof of service, setting forth the name of the person served, the date and time and place of service, and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown. Personal service of notice on one of the owners shall be deemed personal service on all owners.

72 P.S. § 5860.601(a)(3). The requirements of Section 601(a)(3) are cumulative and apply in addition to the tax claim bureaus' obligations to provide notice through publications, posting, and mail. We have said that the General Assembly made a distinction between the notice requirements of Section 602 and 601(a)(3) of the Law due to the General Assembly's "heightened concern for owner[-]occupants being divested of the very property in which they are residing." Matter of Tax Sales by Tax Claim Bureau of Dauphin County, 651 A.2d 1157, 1159 (Pa. Cmwlth. 1994). "By enacting [S]ection 601[(a)(3)], the [General Assembly] expressed a desire to provide a qualitatively different type of notice to an owner[-]occupant and afford such owner [with] increased protection by way of additional

11

notice." McKelvey v. Westmoreland County Tax Claim Bureau, 983 A.2d 1271, 1274 (Pa. Cmwlth. 2009). Thus, without receiving a waiver from a trial court, a tax claim bureau may not sell an owner occupied property absent personal notice to an owner-occupant because actual notice of the tax sale does not waive strict compliance with the personal service requirements of Section 601(a)(3). Id.

In sum, in the absence of actual notice, the Bureau must prove strict compliance with the notice requirements of Section 602 of the Law. Further, and notwithstanding whether a taxpayer received actual notice, the Bureau must demonstrate that it personally served notice on any owner-occupant of the Property subject to the upset tax sale or obtained a waiver of personal service from the trial court.

### 1. Compliance with the Notice Requirements of Section 602

Objector contends that the Bureau did not strictly comply with the notice by first-class mail requirements of Section 602(e)(2) of the Law and that the trial court erred by determining that she had actual notice of the September 18, 2013 upset tax sale. We shall address each issue in turn.

### i. Proof of Mailing

Section 602(e) of the Law requires a tax claim bureau to send notice of a pending upset tax sale by mail. First, Section 602(e)(1) mandates tax claim bureaus to send notice by "certified mail, restricted delivery, return receipt requested, postage prepaid." 72 P.S. § 5860.602(e)(1). If the certified mailing is returned unsigned or signed by someone other than the owner of record, then "at least ten (10) days before the date of the sale, similar notice of the sale shall be

12

given to each owner who failed to acknowledge the first notice by United States first class mail, **proof of mailing**, at his last known post office address. . . ." 72 P.S. § 5860.602(e)(2) (emphasis added). Here, notice of the sale was sent to Objector by certified mail on June 11, 2013 and was returned to the Bureau unclaimed. Thus, pursuant to Section 602(e)(2) of the Law, the Bureau was required to send Objector notice by first-class mail and supply proof of mailing. Objector argues that the proof of mailing required by Section 602(e)(2) was insufficient.

In Horton v. Washington County Tax Claim Bureau, 81 A.3d 883 (Pa. 2013), our Supreme Court interpreted the phrase "proof of mailing" in Section 602(e)(2) of the Law and held that our previous precedent under which "'proof of mailing' [could] be satisfied **only** via proffer of a Certificate of Mailing, USPS Form 3817, [did] not reflect the intention of the [General Assembly]." Id. at 890 (emphasis in original). In Horton, the tax claim bureau proffered a "United States Postal Service [(USPS)] Consolidated Postage Statement – First-Class Mail & Priority Mail" signed by a USPS employee, bearing a USPS stamp, and showing the mail date. Id. at 891. This document was accompanied by a list of persons sent notice, which included the objectors. Further, and of particular relevance to the Supreme Court, the tax claim bureau proffered the actual envelopes mailed to the objectors and "other documents **from the USPS** as evidence." Id. at 891 (emphasis in original).[14] The Supreme Court held that "these USPS documents

---

[14] The importance of the actual envelopes was noted by the Supreme Court in a footnote wherein it stated:

*(Continued…)*

satisf[ied] the statutory mandate for 'proof of mailing' in subsection 602(e)(2)." Id. at 892.

Unlike the documentation in Horton, the evidence proffered by the Bureau here neither includes USPS official documents, signed or unsigned by a USPS employee, nor does the evidence include the actual envelopes sent to Objector. The document proffered by the Bureau is a fifty-seven page list of all the names and addresses of property owners to which the Bureau ostensibly sent notice by first-class mail on September 4, 2013. (Proof of Mailing, Bureau's Ex. F, R.R. at 144a-45a.) Attached to the bottom of each page is a label printed from the Bureau's postage meter showing the amount of postage paid for mailing the notice to the addresses listed on each page. (Proof of Mailing, Bureau's Ex. F, R.R. at 144a-45a; Hr'g Tr. at 29, R.R. at 56a.) Next to the label is a postage stamp, allegedly emplaced by the USPS, listing a September 4, 2013 mail date. (Proof of Mailing, Bureau's Ex. F, R.R. at 144a-45a.) This stamp is the only proof of mailing in any way connected to the USPS and no other USPS document was proffered. (Hr'g Tr. at 29-30, R.R. at 56a-57a.) Because the Bureau did not proffer **any documents from the USPS**, we conclude that the evidence here falls

---

We recognize that a Certificate of Mailing, USPS Form 3817, may in general be the most consistently reliable form of evidence of the date of mailing. However, under the facts of this case, where the Bureau proffered the **actual envelopes** mailed to Appellees and returned by USPS to the Bureau as undeliverable, we cannot conclude that the Bureau failed to establish "proof of mailing" merely because it did not also proffer a Certificate of Mailing.

Horton, 81 A.3d at 892 n.12 (emphasis in original).

14

short of the standard set forth in <u>Horton</u> and the Bureau did not strictly comply with the notice requirement of Section 602(e)(2) of the Law.

### ii. Actual Notice

Having concluded that the Bureau did not strictly comply with Section 602(e)(2) of the Law, we must now consider whether Objector had actual notice of the September 18, 2013 upset tax sale, thereby ameliorating the need for strict compliance. <u>Sabbeth</u>, 714 A.2d at 517. Whether a taxpayer has actual notice of an upset tax sale of his or her property is a question of fact that will not be disturbed on appeal if supported by substantial evidence. <u>Aldhelm, Inc. v. Schuylkill County Tax Claim Bureau</u>, 879 A.2d 400, 407 (Pa. Cmwlth. 2005). Actual notice in the tax sale context "encompasses both *express* actual notice and *implied* actual notice." <u>Sabbeth</u>, 714 A.2d at 517 (emphasis in original). Stated otherwise, "actual notice is such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry." <u>Id.</u> (quoting Black's Law Dictionary 1061-62 (6th ed. 1990)).

Here, the trial court concluded that Objector's testimony was credible and that "on several occasions during the hearing [] Objector testified to her 'actual notice' of the impending tax sale." (Trial Ct. Order, April 3, 2014, n.1.) Upon review of the record, we agree that Objector had actual notice of the September 18, 2013 upset tax sale of the Property and the trial court's finding of actual notice is supported by substantial evidence. Objector testified that she saw a pink fluorescent poster on her Property and read a portion of the document. (Hr'g Tr. at

15

53, 61, R.R. at 80a, 88a.)  It is undisputed that the posted notice which Objector read included the following language:

> Notice is hereby given by the TAX CLAIM BUREAU in and for the County of Northumberland under the Act of 1947, P.L. 1368, as amended, that the said BUREAU will expose at Public Sale in the NORTHUMBERLAND COUNTY ADMIN. BLDG., 399 S. 5th ST. Sunbury, Pennsylvania, at 10:00 A.M. SEPTEMBER 18, 2013.

(Posted Notice, R.R. at 113a.)

Objector's assertion that she did not read the notice in its entirety is not determinative for numerous reasons.  Similar to Sabbeth, the record here is replete with facts that show Objector had, at the very least, implied actual notice of the tax sale.  However, unlike in Sabbeth, where the certified letter was unopened on the objector's desk, Objector here possessed the notice which clearly and unequivocally stated that the Property was to be sold on September 18, 2013 unless the tax delinquency was paid by a date certain, and made a decision to read only a part of that notice.  Objector understood that her home was in jeopardy as a result of defaulting on a payment agreement.  Further, the portion of the notice she admits she read alerted her to the fact that there were looming consequences for her failure to pay.  Based on these facts, although Objector apparently decided not to read the entire notice, we find that Objector had actual notice of the impending upset tax sale.

Because the circumstances show that Objector had actual notice of the upset tax sale, strict compliance with the statutory notice requirements of Section 602 of

16

the Law, including the "proof of mailing" requirement of Section 602(e)(2), are waived.  Sabbeth, 714 A.2d at 518.

### 2. Compliance with the Notice Requirements of Section 601
### i. Waiver of Notice by Personal Service

Objector next argues that the Bureau did not personally serve her with notice of the September 18, 2013 upset tax sale of her home as required by Section 601(a)(3) of the Law and that the trial court erred by granting the Bureau a waiver of the notice by personal service requirement.  Objector contends that, by only attempting to provide notice by personal service during normal work hours, the Bureau acted with utter disregard for her rights and did not establish good cause for the waiver.  Objector contends a reasonable effort to provide personal service of notice would require the designated server to have attempted personal service after work hours or on the weekend.  Further, Objector contends that the process by which the Waiver Petition was presented to the trial court shows a disregard for her rights.  Objector asserts that she was never served with the Waiver Petition; therefore, she was not provided an opportunity to challenge the Waiver Petition.

Purchasers respond by arguing that the Law does not prescribe the number of attempts to personally serve an owner-occupant that must be pursued prior to seeking a waiver from the trial court.  According to Purchasers, three attempts at personal service is standard practice in many counties throughout the Commonwealth and satisfies the good cause shown requirement of Section 601(a)(3). Purchasers also argue that, notwithstanding any errors committed by the trial court in granting the Bureau's Waiver Petition, Objector had actual notice of

17

the upset tax sale, and actual notice nullifies any objections under Section 601(a)(3) of the Law.

When personal service of notice cannot be effectuated, Section 601(a)(3) permits a tax bureau to seek a waiver of the personal service of notice requirement from a court of common pleas. Section 601(a)(3) states: "If [] personal notice cannot be served [on an owner-occupant] within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown." 72 P.S. § 5860.601(a)(3). "Good cause shown" is not defined by the Law and courts of this Commonwealth have yet to interpret the meaning of the term in the tax sale context.[15]

Although the term "good cause shown" has not been interpreted within the context of the Law, courts of this Commonwealth have defined the term with regard to its placement in other statutes and rules of procedure. In Trexler v. Unemployment Compensation Board of Review, 365 A.2d 1341, 1344 (Pa. Cmwlth. 1976), we stated that "good cause" as used in Section 402(a) of the

---

[15] Our consideration of whether the Bureau demonstrated "good cause shown" in this case is purely a matter of compliance with the statutory mandate. We will not consider whether due process requires personal service of notice because it is well established that actual notice of a tax sale obviates due process concerns. See Tracy v. Chester County Tax Claim Bureau, 489 A.2d 1334, 1339 (Pa. 1985) (stating that "due process . . . requires at a minimum that an owner of land be actually notified by government"). With actual notice, due process is satisfied regardless of whether the property owner is an owner-occupier or not. In re Return of McKean County Tax Claim Bureau of Tax Sale Held on Sept. 11, 1995, 701 A.2d 283, 286 (Pa. Cmwlth. 1997). Because we concluded *supra* that Objector received actual notice of the September 18, 2013 upset tax sale of the Property, Objector was not deprived of due process.

18

Unemployment Compensation Law[16] "being undefined in the [Law], is a flexible term and therefore not amenable to general rules or rigid formulas."  We reasoned that "its meaning must be deduc[ed] from the facts of each case in a manner that is consistent with the [Law's] fundamental purpose. . . ."  Id.  Similarly, the Superior Court, in State Farm Insurance Companies v. Swantner, 594 A.2d 316, 320 (Pa. Super. 1991), was confronted with the term "good cause shown" in the context of requiring a plaintiff to submit to a medical examination under Section 1796(a) of the Motor Vehicle Financial Responsibility Law.[17]  The Superior Court held that "good cause shown" is a factual-based inquiry and noted that

---

[16] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(a).  Section 402(a) provides, in relevant part:

> An employe shall be ineligible for compensation for any week—
> (a) In which his unemployment is due to failure, without good cause, either to apply for suitable work at such time and in such manner as the department may prescribe, or to accept suitable work when offered to him by the employment officer or by any employer, irrespective of whether or not such work is in "employment" as defined in this act. . .

Id.

[17] 75 Pa. C.S. § 1796(a).  Section 1796(a) of the Motor Vehicle Financial Responsibility Law provides, in relevant part:

> Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician.  The order may only be made upon motion for good cause shown.

Id.

[w]e sometimes become enamored with tests, steps and guidelines to the point where they interfere with the judicial function. Looking to the definition of "good cause shown," Black's Law Dictionary, 5th Edition, defines it as "substantial reason, one that affords a legal excuse[. Legally sufficient ground or reason. [P]hrase 'good cause' depends upon circumstances of individual case, and *finding of its existence lies largely in discretion of officer or court to which decision is committed.* Wilson v. Morris, Mo., 369 S.W.2d 402, 407 [1963]."

Id. (quoting Black's Law Dictionary (5th ed. 1979)) (emphasis in original). More recently, in Smith v. Borough of Morrisville (Pa. Cmwlth., No. 550 C.D. 2015, filed October 23, 2015), slip op. at 6,[18] this Court utilized the same definition of "good cause" used by the Superior Court above when interpreting the term in the context of a court of common pleas' decision to reinstate an appeal pursuant to Rule 1006 of the Pennsylvania Rules of Civil Procedure for Magisterial District Judges, Pa. R.C.P.M.D.J. 1006. There, we stated, "the determination of whether good cause has been demonstrated is trusted to the trial court's sound discretion." Smith, slip op. at 7 (quoting Anderson v. Centennial Homes, Inc., 594 A.2d 737, 739 (Pa. Super. 1991)); see also Uhl v. C.H. Shoemaker & Son, Inc., 637 A.2d 1358, 1360 (Pa. Super. 1994) (holding that, in the context of establishing good cause to have the mental or physical condition of a party be independently examined under Pennsylvania Rule of Civil Procedure 4010(a), "[w]hether good cause exists is a determination within the discretion of the trial court" (citing John M. v. Paula T., 571 A.2d 1380, 1383(Pa. 1990)).

---

[18] Smith is an unreported panel decision of this Court. Pursuant to Section 414 of this Court's Internal Operating Procedures, an unreported panel decision issued by this Court after January 15, 2008 may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414.

Consistent with case law, we focus our inquiry on whether the trial court abused its discretion by granting the Bureau's Waiver Petition and by considering the facts of this case in light of the fundamental purposes of the Law.[19]

The primary purpose of tax sale laws is to ensure "the collection of taxes, and not to strip away citizens' property rights." Rice, 901 A.2d at 575. Our Supreme Court has said that tax sale laws "were never meant to punish taxpayers who omitted through oversight or error (from which the best of us are never exempt) to pay their taxes." In re Return of Sale of Tax Claim Bureau (Ross Appeal), 76 A.2d 749, 753 (Pa. 1950). Instead, tax sale laws are "meant to protect the local government against wilful [sic], persistent, long standing delinquents for whom we hold no brief, and to whom the appellate court decisions have consistently given short shrift." Id. Because the purpose of the Law is to protect

---

[19] Our goal in construing a statute is to "ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(a). When interpreting a statute we must, where possible, resolve apparent statutory conflicts by giving effect to all provisions of the Law. Id. When the intention of the General Assembly is not apparent by the words of the statute we may consider, *inter alia*:

(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. § 1921(c).

local governments from delinquent taxpayers, failed attempts at personal service of notice may be, depending on the specific facts in the case, legally sufficient to obtain a waiver under Section 601(a)(3) of the Law.

We conclude here that the trial court did not abuse its discretion by granting the Bureau's Waiver Petition. The Waiver Petition averred that the Bureau attempted to personally serve Objector on three different days at three different times of the day and that it satisfied the other notice requirements of Section 602 of the Law. Attached to the Waiver Petition was a document developed by Palmetto Posting stating that Ms. McDowell attempted personal service three times and listed the times and dates of each attempt. The trial court, cognizant that someone's home was at stake, that the purpose of the Law is to protect local governments from persistent tax delinquents, that the Bureau attested to the fact that it satisfied the notice requirements of Section 602 of the Law, and attempted personal service three times at three different times of the day, utilized its discretion to determine that personal service of notice should be waived. The trial court did not abuse its discretion.[20]

---

[20] The Dissent disagrees that this Court should apply an abuse of discretion standard in reviewing a trial court's decision to grant a petition to waive the personal service requirement of Section 601(a)(3) of the Law. In Re: Consolidated Reports et al (Neff), ___ A.3d ___, ___ (Pa. Cmwlth., No. 752 C.D. 2014, filed January 21, 2016) (Leavitt, J. dissent), slip op. at 10. The dissent posits that, because a statute contains the authority for the trial court to grant the petition, the exercise of that authority necessarily raises a question of law subject to our *de novo* review in every case. Id. slip. op. at 11 (citing Gilbert v. Synagro Central, LLC, __ A.3d __ (Pa., No. 121 MAP 2014, filed December 21, 2015). However, the General Assembly, in enacting Section 601(a)(3) of the Law, decided to neither specifically articulate the facts that must be included in a waiver petition nor delineate the efforts that must be taken by tax claim bureaus to establish good cause to justify a waiver. In interpreting other statutes and Court-issued procedural rules, which similarly empower trial courts to grant a waiver of a procedural requirement upon "good

*(Continued…)*

22

Objector next contends that the process by which the trial court exercised its discretion, namely an ex parte proceeding without notice being given to Objector, violates the strict notice requirements of the Law.[21] The Law does not set forth the nature of the proceeding required for considering a petition to waive personal service under Section 601(a)(3) and we find no error in the trial court's decision to address the Bureau's Waiver Petition without notice to Objector. Because the ex parte process at issue concerns the Bureau's inability to serve Objector with notice of the tax sale, it follows that notice of an ex parte proceeding to waive service would be superfluous. Should Objector receive notice of the Waiver Petition and be given an opportunity to contest the Waiver Petition, there would be no need to waive personal service because Objector could be personally served with notice at the hearing.

cause shown," the courts have consistently found the issuance of these waivers should be reviewed as an abuse of discretion. See, e.g., John M., 571 A.2d at 1383; Anderson, 594 A.2d at 739; Swantner, 594 A.2d at 320. This interpretation of the statutory language was a legal question; the answer was to interpret the statute as establishing a discretionary exercise by the trial courts. This standard does not eliminate appellate review of the facts and the determination that good cause was shown; however, it does not invite the appellate court to second-guess the issuance of the waiver in every appeal.

[21] Objector also raises concern over the fact that the Waiver Petition was not actually signed by the Solicitor for the Bureau, but by the Director of the Bureau, who signed the attorney's name. Objector argues that this fact, attested to by the Director of the Bureau at trial, further shows that the Bureau consciously disregarded the strict requirements of the Law. The Waiver Petition states that it was filed by the Bureau's Solicitor, Mr. Rovito, and the Director of the Bureau signed Mr. Rovito's name for him. (Waiver Petition at 1, R.R. at 6a.) However, this issue was not raised to the trial court and is, thus, waived. 777 L.L.P. v. Luzerne County Tax Claim Bureau, 111 A.3d 292, 299 n.7 (Pa. Cmwlth. 2015). We note that Objector is not asking this Court to overturn the waiver purely on the basis of the petition's signature. There is no argument that the lack of an authentic signature on a petition to waive personal service of notice is a basis for overturning an otherwise valid upset tax sale.

### ii. The Bureau's Server Designee

Objector next argues that the Bureau violated the strict requirements of Section 601(a)(3) by attempting personal service of notice by a designated server, Ms. McDowell of Palmetto Posting, who was not authorized to provide such service by the Law. Purchasers respond by asserting that the trial court's decision to waive the requirement of personal service obviates any issue regarding whether the Bureau's server designee was properly appointed by the county commissioners by resolution.

We agree with Purchasers. Section 601(a)(3) requires that personal service of notice of the tax sale be given "by the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause." 72 P.S. § 5860.601(a)(3). Section 601(a)(3) also states, however, that "**[i]f such personal notice** cannot be served within twenty-five (25) days . . ., the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown." 72 P.S. § 5860.601(a)(3) (emphasis added). When interpreting a statute, we must presume that the General Assembly intended every word to have effect. <u>Bilka v. Department of Transportation, Bureau of Driver Licensing</u>, 92 A.3d 1253, 1258 (Pa. Cmwlth. 2014). By including the phrase "such personal service" and not limiting the waiver authorization to the inability to make service, the General Assembly intended that both requirements of Section 602(a)(3) – that personal service be made and that service be made by an authorized person – may be waived by the trial court upon a good cause showing.

24

Because we concluded *supra* that the trial court acted within its discretion to grant the Bureau's Waiver Petition, we now conclude that the requirement that notice upon an owner-occupant via personal service by a sheriff, a sheriff's deputy, or an entity approved by the county commissioners by resolution was properly waived and will not defeat the tax sale.

## B. Abuse of Discretion in Fact-Finding

As a final matter, Objector argues that the trial court abused its discretion by basing its factual findings on arguments contained in the Purchasers' memorandum of law rather than making independent findings based on the evidence presented. In a July 23, 2014 order, the trial court determined that the reasons for its April 3, 2014 Order were adequately reflected in its Order and, therefore, did not issue an opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. Pa. R.A.P. 1925(a). (Trial Ct. Order, July 23, 2014.) The trial court further stated: "[b]ecause the Court relied in no small way upon the memorandum of law submitted to this Court by the Purchaser[s], the Court orders and directs [that the Purchasers' Memorandum of Law] be made part of the record on appeal." (Trial Ct. Order, July 23, 2014.) Objector contends that the above language included in trial court's July 23, 2014 order demonstrates that the trial court abdicated its role as an independent fact-finder.

It is the trial court's exclusive province, as fact-finder, to evaluate evidence adduced at the proceedings, make credibility determinations, and draw inferences from the evidence presented. Smith, 834 A.2d at 1251. "Pennsylvania courts have long recognized the broad discretion given to the fact-finding [t]rial [c]ourt. . . ."

25

Brady v. Borough of Dunmore, 479 A.2d 59, 62 (Pa. Cmwlth. 1984). According to our Supreme Court:

> "judicial discretion" requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration. . . . An "abuse of discretion" or failure to exercise sound discretion is not merely an error of judgment. But if, in reaching a conclusion, [the] law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused.

In re Deed of Trust of Rose Hill Cemetery Association Dated Jan. 14, 1960, 590 A.2d 1, 3 (Pa. 1991) (internal citations omitted).

We understand the trial court's July 23, 2014 order as revealing that the trial court found the arguments set forth in Purchasers' memorandum of law persuasive. Of course, a trial court does not abuse its discretion by finding one party's arguments more persuasive than another; persuading a judge or jury to adopt a certain understanding of the facts is a core task of counsel presenting arguments before any court. Objector has proffered no evidence supporting her contention that the trial court's factual findings were not based upon the evidence presented. In fact, upon review of the record, we conclude that the trial court's findings are supported by the evidence. Accordingly, we find that the trial court did not abuse its discretion.

## III. Conclusion

In conclusion, we hold that the trial court's determination that Objector received actual notice of the September 18, 2013 upset tax sale of her Property is supported by substantial evidence; the trial court did not err by granting the

Bureau's Waiver Petition; and the trial court did not abuse its discretion in fulfilling its fact-finding role. Accordingly, the April 3, 2014 Order of the trial court is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

Judge Brobson dissents.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Consolidated Reports and Return | : | |
| By the Tax Claims Bureau of | : | |
| Northumberland County of | : | |
| Properties Exposed for Scheduled | : | No. 752 C.D. 2014 |
| Sale September 19, 2012 under | : | |
| the Real Estate Tax Sale Law of | : | |
| July 7, 1947, Act Number 542 | : | |
| | : | |
| Appeal of: Shari Neff | : | |

# **O R D E R**

**NOW**, January 21, 2016, the April 3, 2014 Order of the Court of Common Pleas of Northumberland County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Consolidated Reports and Return : 
By the Tax Claims Bureau of : 
Northumberland County of : 
Properties Exposed for Scheduled : 
Sale September 19, 2012 under : 
the Real Estate Tax Sale Law of : 
July 7, 1947, Act Number 542 : No. 752 C.D. 2014
 : Submitted: September 16, 2015
Appeal of: Shari Neff :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge

DISSENTING OPINION
BY JUDGE LEAVITT                                    FILED: January 21, 2016


Respectfully, I dissent from the majority's construction and application of Section 601(a)(3) of the Real Estate Tax Sale Law (Tax Sale Law).[1] Intending to give the highest protection to an owner-occupant of property subject to a tax sale, the legislature requires personal service of a notice of that sale by a sheriff or person chosen by formal resolution of the county. The tax claim bureau may request a court of common pleas to grant a waiver of personal service for "good cause shown." Section 601(a)(3), 72 P.S. §5860.601(a)(3). Unlike the majority, I would not defer to the trial court's legal conclusion that the Tax Claim

_____

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §5860.601(a)(3).

Bureau's petition established good cause for a Section 601(a)(3) waiver of personal service. Reviewing that question *de novo*, as is appropriate for any legal issue on appeal, I would conclude that three visits by the Bureau's unqualified server-designee to the owner-occupant's house in a single week did not justify a waiver.

The sale of real property for unpaid taxes requires a series of notices to be given a property owner, and strict compliance is required in order to satisfy the demands of due process. *See* Section 602(a)-(g) of the Tax Sale Law, 72 P.S. §5860.602(a)-(g). The first notice must be sent by certified mail at least 30 days in advance of the sale; provide details about the amount of tax delinquency; and give a warning, in large letters, of the consequences of non-payment. 72 P.S. §5860.602(e)(1), (g). If the tax claim bureau does not receive proof that the taxpayer has received the certified mailing, then it must undertake follow up measures. Specifically, it must post the property with notice of the sale and send a first-class letter to the taxpayer at least ten days before the sale. 72 P.S. §5860.602(e)(2), (3). If the tax claim bureau doubts that the first-class letter has been effective, it must make a reasonable effort to locate the property owner. Section 607.1 of the Tax Sale Law, 72 P.S. §5860.607a(a).[2] These notice requirements apply to the tax sale of every property, commercial or residential, rented or owner-occupied. Strict compliance is required. *Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003) ("Notice to owners of an impending sale of their properties is a duty requiring strict

---

[2] Added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. §5860.607a(a).

compliance in order to guard against the deprivation of property without due process.").

Concluding that the Section 602 notices were not adequate in the case of real property occupied by the taxpayer, the legislature amended the Tax Sale Law in 2001 to add another requirement. Simply, where an owner-occupant taxpayer has not responded to the Section 602 notices by paying the overdue tax in full or in part, then the tax claim bureau must personally serve the owner-occupant with a notice of the impending sale. Specifically, Section 601(a)(3) states that

> [n]o owner-occupied property may be sold unless *the bureau has given the owner occupant written notice of such sale* at least ten (10) days prior to the date of the actual sale *by personal service by the sheriff* or his deputy or person deputized by the sheriff ... unless the county commissioners, by resolution, appoint a person or persons to make all personal service required by this clause.

72 P.S. §5860.601(a)(3) (emphasis added). The "personal service" required by Section 601(a)(3) can be effected at any place the server can find the owner-occupant. It need not take place at the owner's residence, although that is a logical place to start.[3]

The process followed by the Tax Claim Bureau and its "designated server," Palmetto Postings, Inc., turns this statutory scheme on its head. Every residential property scheduled for sale gets a visit from Palmetto Postings six

---

[3] Personal service under the Rules of Civil Procedure can be effected by handing the document to an "adult" in the household or a person "in charge" at the "usual place of business" of the person to be served. *See* PA. R.C.P. NO. 402. Section 601(a)(3) of the Tax Sale Law does not specify the manner of personal service. It does not state that personal service can be effected by handing a copy of the written notice to an individual on the premises other than the owner-occupant. But this could be a reasonable interpretation of Section 601(a)(3).

weeks in advance of the sale. The Tax Sale Law, however, contemplates that personal service be made only where the home is occupied by its owner and only on the subset that has not responded to the 30-day advance certified mailed notice with a payment in full or a payment plan. This is why the personal service deadline is ten days before the "actual sale." 72 P.S. §5860.601(a)(3). Further, the Tax Sale Law contemplates personal service, not additional postings on, and visits to, the property, which is what Palmetto Postings did.[4]

The Tax Claim Bureau developed this triple posting system not to effect personal service on owner-occupants but to establish grounds for a waiver of the personal service requirement. The Tax Sale Law allows a waiver of personal service for good cause. Section 601(a)(3) provides, in relevant part, as follows:

> If such personal notice cannot be served within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown.

72 P.S. §5860.601(a)(3). Additional postings do not constitute "good cause" for a waiver of personal service.

Although "personal service" is not defined in the Tax Sale Law, it is not a novel concept. It has long been used in our legal system and was, no doubt, a point of reference for our legislature in drafting Section 601(a)(3). Under the

---

[4] The three trips to Taxpayer's property were not for the sole purpose of attempting personal service; one trip was also for the property posting. On August 9, 2013, at 9:19 a.m. Palmetto Postings (1) attempted the personal service required by Section 601(a)(3) of the Tax Sale Law, 72 P.S. §5860.601(a)(3), and (2) posted the property as required by Section 602(e)(2), 72 P.S. §5860.602(e)(2). Petition to Waive Requirement of Personal Service of Notice of Tax Sale, Exhibit B.

Pennsylvania Rules of Civil Procedure, personal service of original process is accomplished "by handing a copy [of the original process] to the defendant" or by handing a copy to an adult at the defendant's home or the person in charge at the defendant's "usual place of business." PA. R.C.P. No. 402.

As is the case with Section 601(a)(3), the Pennsylvania Rules of Civil Procedure permit a waiver of personal service for good cause circumstances:

> (a) If service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service. *The motion shall be accompanied by an affidavit stating* the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and *the reasons why service cannot be made*.

PA. R.C.P. No. 430(a).[5] Attempts at personal service that have not been successful can be grounds for a waiver so long as those attempts reflect "practical efforts to serve the defendant under the circumstances." 2 GOODRICH AMRAM 2D §430(a):1. At that point, the court may order alternate service in lieu of personal service.

Here, Palmetto Postings visited Taxpayer's home three times in a single week in the month of August during regular working hours, when Taxpayer was not there and not likely to be there. Palmetto Postings did not make a single attempt after 5:00 p.m. or on the weekend, when someone was more likely to be home. This does not constitute a practical effort at service, *i.e.*, "good cause shown."

---

[5] Where the location of the defendant is not known, the plaintiff must make a good faith effort to locate the defendant. 2 GOODRICH AMRAM 2D §430(a):1. A "good faith" effort to locate a defendant requires more than a "mere paper search" of the public records. *Deer Park Lumber, Inc. v. C.B. Major*, 559 A.2d 941, 946 (Pa. Super. 1989).

United States District Courts have construed the waiver authorized in Pennsylvania's Rule of Civil Procedure 430(a) to mean that the plaintiff must make a practical effort at service before alternate service will be allowed.[6] *Barbosa v. Dana Capital Group, Inc.*, Civ. A. No. 07-CV-1724, 2009 WL 902339, at \*4 (E.D. Pa. Mar. 31, 2009). There is no magic number of attempts that will constitute a "practical effort." Four attempts over the course of several weeks were held not sufficient because they were made on the same day of the week and two were made within the same hour. *Id.* at \*6 (citing *Calabro v. Leiner*, 464 F.Supp.2d 470 (E.D. Pa. 2006)). In *Calabro*, the District Court held that

> *the plaintiff bears the burden of showing that she has undertaken practical efforts to serve the defendants under the circumstances, a burden which she is unable to meet in this case. Half-hearted attempts at service will not do.* While the plaintiff, through the U.S. Marshal, has attempted service three times on the defendants, two were on the same day of the week-Tuesday, and the two that have listed times of attempted service took place around the same time of day, between 10:00 a.m. and 11:30. Aside from the fact that the U.S. Marshal knocked on the door three times (presumably with some force) and received no answer, *there is no evidence that defendants are attempting to evade service; nor is there any other indication why future attempts at service, at different times or on different days, would be futile.* Plaintiff has, therefore, failed to meet her burden of showing that she has undertaken practical efforts to serve the defendants under the circumstances.

*Calabro*, 464 F.Supp.2d at 473.

---

[6] Federal Rule of Civil Procedure 4(e)(1) permits service of initial pleadings by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

Here, Palmetto Postings made three trips to Taxpayer's home in the same week and in the middle of the working day, *i.e.*, between the hours of 9:19 a.m. and 4:13 p.m. Taxpayer typically leaves her home on weekdays around 7:20 a.m. and returns around 5:45 p.m. The Tax Claim Bureau did not allege in its waiver petition that Taxpayer was evading service or that a future attempt at service, say in the evening hours, would be futile. Palmetto Postings scheduled its visits to Taxpayer's home at times convenient for its employee, not when it was likely to succeed in finding someone present there.

The Tax Claim Bureau's waiver petition recited that "at least three (3) separate attempts have been made by the server designee on each property" listed in Exhibit A, which was a list of 97 properties, including Taxpayer's home. Petition to Waive Requirement of Personal Service of Notice of Tax Sale, ¶5; Reproduced Record at 6a (R.R. ___). The waiver petition offered neither averments nor affidavits that the Bureau's "server designee" made a "practical" effort at service on a person, as opposed to a property visit. When two attempts in the middle of the work day fail, it is time for the Tax Claim Bureau to attempt service in the evening or on the weekend.[7]

The legislature requires personal service on an owner-occupant at least ten days "prior to the date of actual sale." Section 601(a)(3) of the Tax Sale

---

[7] This is consistent with Section 607.1(a) of the Tax Sale Law, which requires the tax claim bureau to make "reasonable efforts to discover the whereabouts" of a taxpayer when notification sent to him is returned to the tax claim bureau "without the required receipted personal signature of the addressee...." 72 P.S. §5860.607a(a). Only when "reasonable efforts have been exhausted" may the property be "rescheduled for sale." *Id.* In sum, a reasonable effort to comply with all notice requirements, including personal service, is a constant in the Tax Sale Law.

Law, 72 P.S. §5860.601(a)(3). It is serious about the tax claim bureau's obligation to make personal service. This is why the legislature required the service be made by a sheriff or his deputy, *i.e.*, persons who have been serving process since before Pennsylvania joined the Union. Alternatively, a county can appoint another qualified person; however, the appointment is not to be done casually but only by formal resolution. Because the legislature is serious about personal service, it also provided that a tax claim bureau's excuse from the personal service requirement requires no less than a court order.

The waiver of personal service was to be the exception, not the rule. Here, the trial court concluded that the Tax Claim Bureau had "good cause" for a waiver because Palmetto Postings appeared three times at the property to be sold, during working hours and in the same week. If the legislature had wanted obtaining a waiver to be that simple, it would have so directed in the Tax Sale Law. Instead, it used the phrase "good cause shown."

The trial court's grant of the waiver was also erroneous because the Tax Claim Bureau's "server designee" was not qualified to make or attempt personal service. Neither Palmetto Postings nor its employee, Valorie McDowell, was deputized by the Northumberland County Sheriff or appointed by the Northumberland County Commissioners to make personal service. The majority agrees with the purchaser's tautological argument that the server's qualification does not matter because personal service can be waived.[8]

---

[8] The Tax Claim Bureau did not participate in this appeal. The purchaser, which intervened in the trial court proceeding, is the party that filed a response to Taxpayer's brief.

First, the legislature specified that a sheriff or deputy, *i.e.*, persons with knowledge and experience in serving legal documents, should be the person to make or attempt service. It allowed other persons to do this service but only if appointed by the county commissioners. In that appointment, the county commissioners are guided by the legislature's decision that a sheriff was a person qualified for this job.

Second, the requirement that the service be undertaken by a sheriff, or county appointee, is absolutely necessary where the tax claim bureau's "good cause" basis for requesting a waiver is that attempts at personal service have not been successful. Any attempt at personal service is a nullity if it has not been done by a person qualified to make service in the first place.[9]

Taxpayer has also challenged the form of the notice, which stated, in bold and in large type, the amount of tax owed through August 31, 2013. However, only in fine print, without any bolding, and at the very bottom of the form did the notice warn that the "BUREAU will expose at Public Sale ... 399 S. 5th St., Sunbury, Pennsylvania, at 10:00 A.M.[,] SEPTEMBER 18, 2013, *or any day to which the sale may be adjourned*, readjourned or continued, for the purpose of collecting unpaid taxes, municipal claim and all costs incidented thereto ...." R.R. 113a (emphasis added). In *In re Consolidated Return of the Tax Claim Bureau of County of Beaver*, 105 A.3d 76, 81 n.8 (Pa. Cmwlth. 2014), several public interest groups, including AARP, the National Association of Consumer Advocates, and

---

[9] Not all waiver petitions will be based upon failed attempts at service. For example, a tax claim bureau may seek a "good cause" waiver because the owner-occupant is away on a yearlong ocean voyage.

the National Consumer Law Center, filed *amici curiae* briefs arguing that due process requires a meaningful notice of a tax liability and a threatened tax sale. We did not address the sufficiency of the form of the notice in *County of Beaver* because the taxpayer won her appeal on other grounds.  I agree with Taxpayer that the notice form posted on her property contains ambiguities and, thus, did not comport with due process.  *See, e.g., C.S. v. Department of  Public Welfare,* 879 A.2d 1274, 1280 (Pa. Cmwlth. 2005) (equivocal notice to alleged perpetrator of child abuse that he "may" receive a hearing was inconsistent with his statutory and due process right of appeal and, therefore, a breakdown in the administrative process warranting  *nunc pro tunc* appeal).

Finally, I reject the majority's conclusion that this Court owes deference to the trial court's legal conclusion that the Tax Claim Bureau established "good cause" for a waiver of personal service under Section 601(a)(3) of the Tax Sale Law.  The majority cites cases from this Court and the Superior Court for the proposition that "good cause shown" is a factual-based inquiry. Majority slip op. at 19-20 (citing *Smith v. Borough of Morrisville* (Pa. Cmwlth., No. 550 C.D. 2015, filed October 23, 2015), and *State Farm Insurance Companies v. Swantner*, 594 A.2d 316 (Pa. Super. 1991)).  The majority also cites *Trexler v. Unemployment Compensation Board of Review*, 365 A.2d 1341, 1344 (Pa. Cmwlth. 1976), for this proposition.  Indeed, *Trexler* held that "good cause" is "not amenable to general rules or rigid formulas" but will be determined on a case-by-case basis.  *Id.*  Ironically, here, the trial court has established a "rigid formula," *i.e.,*  three trips to a residential property by anyone designated by the Tax Claim

Bureau, not the Sheriff or the County, constitutes "good cause shown" for a waiver of personal service.[10]

Whether a trial court reaches the proper legal conclusion on the evidence presented is a question of law. *Commonwealth v. 1997 Chevrolet*, 106 A.3d 836, 847 n.9 (Pa. Cmwlth. 2014), *appeal granted sub nom.*, *Commonwealth v. 1997 Chevrolet & Contents Seized from Young*, 120 A.3d 993 (Pa. 2015). Likewise, a question of statutory interpretation is a question of law. *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001). As our Supreme Court has explained, the proper interpretation and application of language [in a contract] … presents a question of law over which our scope of review is plenary and standard of review *de novo*." *Pennsylvania National Mutual Ins. Co. v. St. John,* 106 A.3d 1 (Pa. 2014). Likewise, the interpretation and application of language in a statute presents a question of law; accordingly, the trial court is afforded no deference and its decision "will instead be reviewed *de novo*." *Id.*

Our Supreme Court's recent opinion in *Gilbert v. Synagro Central, LLC*, __ A.3d __ (Pa., No. 121 MAP 2014, filed December 21, 2015), illustrates this point. There, the Court was called upon to decide, *inter alia*, whether the trial court properly concluded that land application of biosolids as fertilizer was a "normal agricultural operation" for purposes of a statute of repose in Section

---

[10] When considering failed attempt at service as grounds for a waiver, there is no magic number that will suffice. A single attempt may suffice where, for example, the owner-occupant puts his hands in his pocket when the deputy sheriff attempts to hand him the tax sale notice or refuses to answer the door.

954(a) of the Right to Farm Act, 3 P.S. §954(a).[11]  The Court rejected the Superior Court's reliance on cases that held that determining the applicability of a statute of repose was a fact-finding inquiry, to which the appellate court owes deference. The *Gilbert* court emphasized that the facts were undisputed; the only question was whether appellants met the statutory requirements of Section 954(a).  The Court reasoned:

> This question does not involve fact finding; it involves the application of a statute's definition to the record's facts.
>
> It is well settled that determining whether an activity, entity, or object falls within the meaning of a statutory definition is a matter of statutory interpretation, and thus is a question of law for the court to decide.

*Gilbert*, __ A.3d at __; slip op. at 27.[12]

---

[11] Act of June 10, 1982, P.L. 454, *as amended*, 3 P.S. §954(a).

[12] The Supreme Court cited numerous examples that bear repeating here.  *See, e.g., Meyer v. Community College of Beaver County*, 93 A.3d 806, 812–13 (Pa. 2014) (whether political subdivision agency is "person," as defined by Pennsylvania Unfair Trade Practices and Consumer Protection Law, is matter of statutory interpretation and, therefore, "a pure question of law"); *Glatfelter Pulpwood Co. v. Commonwealth*, 61 A.3d 993, 998 (Pa. 2013) (whether particular out-of-state timber sale constitutes "business income," as defined by Pennsylvania's Tax Reform Code of 1971, is question of law); *Dechert LLP v. Commonwealth*, 998 A.2d 575, 579 (Pa. 2010) (whether canned computer software constitutes "tangible personal property," within definition provided by Pennsylvania Tax Reform Code of 1971, "is an issue of statutory construction, which is a pure question of law"); *E.D.B. ex rel. D.B. v. Clair*, 987 A.2d 681, 683–84 (Pa. 2009) (whether minor child qualifies as "beneficiary" of medical assistance, as defined by Pennsylvania Fraud and Abuse Control Act of 1980, is question of law); *Rendell v. Pennsylvania State Ethics Commission*, 983 A.2d 708, 712–13 (Pa. 2009) (whether non-profit corporation constitutes "business," within definition provided by §1102 of Pennsylvania's Public Official and Employee Ethics Act, is issue of "statutory interpretation [and] therefore a question of law").  To this exhaustive list I would add a question with which this Court is eminently familiar, *i.e.*, whether an employee's activity constitutes "willful misconduct" in an unemployment case.  Because the term "willful misconduct" is not defined in the Unemployment **(Footnote continued on the next page . . .)**

The majority's response to *Gilbert* is that the interpretation of statutory language such as "good cause shown" that is left undefined by the legislature presents a "legal question," the answer to which requires "a discretionary exercise by the trial courts." Majority slip op. at 23 n.21. There is no question that a court exercises discretion and judgment when construing and applying a statute. But that does not mean the trial court is entitled to deference under an appellate standard of review. It goes without saying that a tribunal lacks discretion to construe a statute incorrectly. The application of the law to facts is a legal conclusion, and the appellate standard of review is *de novo*; no deference is owed to the tribunal below. *See, e.g., Bowling v. Office of Open Records*, 75 A.3d 453, 466 (Pa. 2013) ("Because these issues are purely legal ones involving statutory interpretation, we exercise a *de novo* standard of review and a plenary scope of review[.]"). *See also In re Doe*, 33 A.3d 615, 624 (explaining that questions of law are subject to *de novo* review, but fact-intensive inquiries are more suitable to deferential review).

Here, the relevant facts on the attempts at service were undisputed. Palmetto Postings visited Taxpayer's home on three occasions: August 5, 2013, at 1:21 p.m., August 8, 2013, at 4:13 p.m., and August 9, 2013, at 9:19 a.m. The issue on appeal is a purely legal one: whether the trial court correctly waived the qualification requirement for a "server designee" and the requirement of personal service on 97 owner-occupants for the petition's stated grounds of three property

---

**(continued . . .)**
Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§751-914, our courts have defined the term for purposes of that inquiry.

visits. It is for this Court to decide whether the Tax Claim Bureau established "good cause shown" for a waiver of personal service on the record facts. In deciding that issue, we do not owe deference to the trial court.

By affirming the trial court, this Court has established the paradigm for a waiver of personal service in all 67 counties: three property visits (i) in a single week in August (when owner-occupants often vacation), (ii) between the hours of 9:19 a.m. and 4:10 p.m., and (iii) by any person, whether or not qualified by virtue of being a member of the sheriff's office or having been appointed by the county commissioners. Effectively, this replaces the personal service requirement with three visits to an owner-occupied property by anyone who can read and operate a vehicle.

At stake is a family home scheduled for a tax sale. It was the legislature's intent that the sheriff, or server appointed by the county, notify the owner of that sale, at least ten days before its occurrence, by placing a notice into the hands of the owner-occupant. The Tax Claim Bureau made three visits to Taxpayer's property. It did not make a practical effort at personal service upon Taxpayer herself. It did not designate a server qualified to make personal service.

For these reasons, I would reverse the trial court's order and set aside the sale of Taxpayer's home because the Tax Claim Bureau did not comply with the exacting standards of Sections 601 and 602 of the Tax Sale Law.

_____
MARY HANNAH LEAVITT, Judge

MHL-14