# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Lee Clemmer                  :
                                     :
            v.                       :
                                     :
Fayette County Tax Claim Bureau      :
                                     :
            v.                       :   No. 260 C.D. 2017
                                     :   Submitted: November 13, 2017
Jason Brooks,                        :
            Appellant                :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
PRESIDENT JUDGE LEAVITT                    FILED: December 14, 2017

Jason Brooks (Purchaser) appeals an order of the Court of Common Pleas of Fayette County (trial court) granting the petition of William Clemmer (Taxpayer) to set aside a tax sale of property. In doing so, the trial court held that the Fayette County Tax Claim Bureau (Tax Claim Bureau) failed to comply with the statutory notice requirements of the Real Estate Tax Sale Law (Tax Sale Law).[1] Purchaser asserts that the trial court erred in this regard and that, in any case, Taxpayer had actual notice of the upset tax sale. Discerning no merit to these contentions, we affirm the trial court.

On June 18, 2004, Taxpayer and his father, Barry Clemmer, Sr., purchased a property located at 4527 Morgantown Road, Fayette County (Property) for $23,000, as joint tenants with a right of survivorship. Certified Record (C.R.), Exceptions to Upset Tax Sale, Exhibit A. Taxpayer became the sole owner of the

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101-5860.803.

Property when his father died on April 20, 2011. Taxpayer did not reside at the Property but, rather, nearby at 4543 Morgantown Road. On September 19, 2016, the Property was sold to Purchaser at an upset tax sale for $961.49. On November 21, 2016, Taxpayer filed a petition to set aside the upset tax sale. Purchaser intervened, and the trial court conducted a hearing.

At the hearing, Marjorie Stephanini, First Assistant of the Tax Claim Bureau, testified about the Bureau's procedures in conducting the upset tax sale of the Property, for which taxes in the amount of $733.67 were past due. Stephanini explained that Taxpayer's address on file was 4543 Morgantown Road, and it was to that address that the Tax Claim Bureau sent a notice of the upset sale by certified mail. The certified mailing was returned to the Bureau unclaimed. Stephanini explained the Tax Claim Bureau's response to the return of a certified mailing as unclaimed:

> [Counsel]: Once the Tax Claim Bureau receives a returned letter, what typically is the next step that they [sic] follow in trying to make sure that notice is given?
>
> [Stephanini]: If it was – we go by the address that is on file with us.

Notes of Testimony, 1/13/2017, at 18 (N.T. __); Reproduced Record at 38a (R.R. __). On August 29, 2016, the Tax Claim Bureau sent a 10-day notice of the upset tax sale by first-class mail to Taxpayer at 4543 Morgantown Road, the address on file.

Taxpayer testified that he had been incarcerated in the Fayette County Prison since March 24, 2016. Accordingly, he did not receive either the May 17, 2016, certified mailing or the first-class mailing of August 29, 2016. The parties

stipulated that Taxpayer was incarcerated as of March 24, 2016, and that Taxpayer remained incarcerated as of January 3, 2017, the date of the hearing.

On February 6, 2017, the trial court set aside the upset sale of Taxpayer's Property. The trial court held that the Tax Claim Bureau did not comply with the statutory notice provisions of the Tax Sale Law because it did not make reasonable efforts to locate Taxpayer after the certified mailing was returned unclaimed. The trial court explained as follows:

> It is undisputed that [Taxpayer] was incarcerated in the Fayette County Prison at the time the said notices were sent. Where a mailed notice has not been delivered because of an inaccurate address, the Tax Bureau must make a reasonable effort to ascertain the identity of the owner(s).… In the instant case, it appears to this Court that a reasonable effort by the Fayette County Tax Claim Bureau, being situate in the Fayette County Courthouse, would have involved at least a telephone call to the Fayette County Clerk of Courts, located in the same courthouse, to inquire as to whether Petitioner had been arrested, and if so, what address he provided to the authorities at the time of his arrest and whether, having been arrested, he might be lodged in a jail cell.

Trial Court Opinion, 2/6/2017, at 2-3; R.R. 118a-19a. Purchaser appealed, but the Tax Claim Bureau did not appeal.

We begin with a review of the relevant law. The Tax Sale Law requires a tax claim bureau to give notice to the delinquent taxpayer before his property can be sold in satisfaction of overdue taxes. *In re Consolidated Reports and Return by Tax Claims Bureau of Northumberland County of Properties*, 132 A.3d 637, 644 (Pa. Cmwlth. 2016). The United States Supreme Court has held that due process is implicated when property is taken for the collection of taxes, stating:

> [p]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property.

3

> But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.

*Jones v. Flowers*, 547 U.S. 220, 234 (2006). To satisfy due process, a tax claim bureau must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 226 (internal quotation omitted). The notice provisions of the Tax Sale Law "assure that no one is deprived of property without due process of law." *In re Tax Claim Bureau*, 419 A.2d 206, 209 (Pa. Cmwlth. 1980). Accordingly, a tax claim bureau must strictly comply with each and every statutory notice provision, or the tax sale will be set aside. *Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1252 (Pa. Cmwlth. 2003).

Relevant to this appeal is Section 602(e) of the Tax Sale Law, which governs notice requirements to the owner of the property exposed to an upset tax sale. Section 602(e) states as follows:

> (e)  In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

> (1)  At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

> (2)  If return receipt is not received from each owner pursuant to the provisions of clause (1), *then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail*, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes.

4

It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

(3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

72 P.S. §5860.602(e) (emphasis added). In short, the tax claim bureau must notify "each owner" of the scheduled sale by certified mail and then by first class mail, if the owner has "failed to acknowledge the first notice." *Id.*

Where the certified mailing is returned unclaimed, the tax claim bureau must take additional steps. Section 607.1(a) of the Tax Sale Law states:

(a) When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed *notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt* as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, *then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.* When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

5

72 P.S. §5860.607a(a)[2] (emphasis added).  Simply, the tax claim bureau "must exercise reasonable efforts" to locate the taxpayer whose certified mailing is returned "without the required receipted personal signature" of the taxpayer. *Id.*  The legislature has provided examples of "reasonable efforts" and clarified that these examples are not definitive but merely illustrative.  Indeed, we have cautioned that undertaking the illustrative examples may not suffice.  Stated otherwise, "[t]he statute leaves open the possibility that a tax claim bureau's reasonable effort is not necessarily restricted to the searches listed in [Section] 607.1 of the Tax Sale Law." *In re Upset Tax Sale of September 29, 2014*, 163 A.3d 1072, 1078 (Pa. Cmwlth. 2017) (internal quotations omitted).  A showing that the property owner had actual notice of the pending tax sale can ameliorate the need for strict compliance with the notice provisions. *Consolidated Reports*, 132 A.3d at 645.  With this paradigm in mind, we turn to the parties' arguments on appeal.[3]

Purchaser argues that the trial court erred in holding that the Tax Claim Bureau did not comply with the notice provisions of the Tax Sale Law.  Purchaser concedes that the unclaimed certified mailing triggered the "reasonable efforts" requirement of Section 607.1, but he argues that reasonable efforts do not include a search of prisons to see where or if the property owner is incarcerated.  Rather, it was Taxpayer's burden to notify the Tax Claim Bureau of his incarceration.

Taxpayer responds that there is no evidence that the Tax Claim Bureau exercised *any effort* to locate him, let alone a reasonable one.  He contends that

---

[2] Added by the Act of July 3, 1986, P.L. 351.

[3] Our review determines whether the trial court abused its discretion, erred as a matter of law, or rendered a decision with lack of supporting evidence. *In re Upset Tax Sale of September 29, 2014*, 163 A.3d at 1074 n.3.

6

minimal effort would have revealed his incarceration in the Fayette County Prison, which is located in the same building as the Tax Claim Bureau.[4]

In reviewing the validity of a tax sale, the court must focus "not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the [tax claim bureau] comply with the requirements of the [statute]." *Consolidated Reports*, 132 A.3d at 644 (quoting *Smith*, 834 A.2d at 1251). It is the conduct of the tax claim bureau that is determinative of compliance with the statutory notice provisions. The question here is whether the Tax Claim Bureau made "reasonable efforts" to discover the whereabouts of Taxpayer after its certified mailing to him was returned as unclaimed.

Section 607.1 of the Tax Sale Law states that reasonable efforts include, "but [are] not necessarily [ ] restricted to:" (1) a search of current county telephone directories, (2) a search of dockets and indices of the county tax assessment offices, (3) a search of the recorder of deeds office and the prothonotary's office, and (4) contact with alternate addresses or telephone numbers that may be included in the property file. 72 P.S. §5860.607a(a). This list details the "mandatory minimum search required," but what constitutes a reasonable effort is fact-specific. *Steinbacher v. Northumberland County Tax Claim Bureau*, 996 A.2d 1095, 1099 (Pa. Cmwlth. 2010) (internal quotation omitted). It matters not that the reasonable effort may not have borne fruit. An effort must still be undertaken. *Maya v. County of Erie Tax Claim Bureau*, 59 A.3d 50, 57 (Pa. Cmwlth. 2013). Futility is not a defense to a tax claim bureau's failure to exercise reasonable efforts. *Id.* Further, the tax claim bureau must do a reasonable search even where the address to which

---

[4] Taxpayer notes that Purchaser knew of Taxpayer's incarcerated status at the time of the upset sale. Taxpayer was incarcerated on an assault conviction stemming from a fistfight with Purchaser.

the tax claim bureau sent the notices is correct. *Grove v. Franklin County Tax Claim Bureau*, 705 A.2d 162, 164 (Pa. Cmwlth. 1997).

Here, the Tax Claim Bureau did not offer evidence that it undertook any effort to locate Taxpayer. First Assistant Stephanini testified that when Taxpayer's certified mailing was returned unclaimed, the Tax Claim Bureau simply sent the first class mailing of the notice to the same "address on file." N.T. 18; R.R. 38a. She did not testify that the Tax Claim Bureau did anything to find an alternate address. Nor was there any evidence of a notation in Taxpayer's property file to document that a reasonable effort was made. 72 P.S. §5860.607a(a) (requiring that "a notation [] be placed in the property file describing the efforts made…..").

For these reasons, we reject Purchaser's first issue on appeal. We need not decide whether the Tax Claim Bureau was required to do a search of prisons as part of its reasonable effort to locate Taxpayer because the record is devoid of evidence that the Tax Claim Bureau made any effort at all to locate Taxpayer. *See Maya*, 59 A.3d at 57. The tax sale did not comply with the notice requirements in the Tax Sale Law and, thus, the trial court did not err in setting it aside.

Alternatively, Purchaser argues that Taxpayer had actual notice of the September 19, 2016, tax sale. In *Consolidated Reports*, we waived strict compliance with the mail notice requirements of Section 602 of the Tax Sale Law because the taxpayer had actual notice of the impending sale. The taxpayer, who lived on the property sold at the upset sale, testified that she saw a pink fluorescent notice posted on her lawn, but only read it in part. *Consolidated Reports*, 132 A.3d at 648. We explained that

> [taxpayer] here possessed the notice which clearly and unequivocally stated that the Property was to be sold on September 18, 2013 unless the tax delinquency was paid by a date certain, and made a decision to read only a part of that

notice. [Taxpayer] understood that her home was in jeopardy as a result of defaulting on a payment agreement. Further, the portion of the notice she admits she read alerted her to the fact that there were looming consequences for her failure to pay. Based on these facts, although [taxpayer] apparently decided not to read the entire notice, we find that [taxpayer] had actual notice of the impending upset tax sale.

*Id.*

Purchaser maintains that, as in *Consolidated Reports*, Taxpayer had actual notice of the impending sale. In support, Purchaser directs the Court to the following exchange:

> [Counsel]: And the other question that I had is, are you aware your property was concurrently under an installment plan to pay those taxes?
>
> [Objector]: Right. Right. Right.
>
> [Counsel]: And to your understanding, if you had not paid the taxes, the payment on the taxes had not been made, how did you understand – what did you understand would happen to the property?
>
> [Objector]: Of course it would be sold if I wasn't making any payments at all.
>
> [Counsel]: And as far as you can remember, when was the last payment that you made on the property?
>
> [Objector]: July.
>
> [Counsel]: July of which year?
>
> [Objector]: 2015.

N.T. 31-32; R.R. 53a-54a. We disagree that Taxpayer's testimony requires a reversal of the trial court.

9

First, *Consolidated Reports* is distinguishable. In the present case, Taxpayer did not see the notice posted on his Property, which fact was critical to the holding in *Consolidated Reports*. Second, the testimony of Taxpayer cited by Purchaser does not prove actual notice. Taxpayer's awareness of the consequences of unpaid property taxes does not equate to actual notice that his Property would be sold on a particular day and at a precise time, *i.e.*, September 19, 2016.

In sum, the Tax Claim Bureau failed to comply with the notice requirements of Sections 602 and 607.1 of the Tax Sale Law. Accordingly, the trial court's order setting aside the upset tax sale is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANHIA

| | | |
|---|---|---|
| William Lee Clemmer | : | |
| | : | |
| v. | : | |
| | : | |
| Fayette County Tax Claim Bureau | : | |
| | : | |
| v. | : | No. 260 C.D. 2017 |
| | : | |
| Jason Brooks, | : | |
| Appellant | : | |

# **O R D E R**

AND NOW, this 14th day of December, 2017, the order of the Court of Common Pleas of Fayette County dated February 6, 2017 in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge