IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Herman Piuma,      :
  Appellant     :
          :
    v.      :
          :
Bucks County Tax Claim Bureau : No. 1513 C.D. 2024
and LI Bucks, LLC     : Submitted: February 3, 2026


BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE TSAI         FILED: May 4, 2026


Herman Piuma (Piuma) appeals from the order of the Court of Common Pleas of Bucks County denying his petition to set aside the upset tax sale of his property located at 916 Wyoming Avenue, Croydon, Pennsylvania (Property) to LI Bucks, LLC (LI Bucks). Before this Court, Piuma argues that the Bucks County Tax Claim Bureau (Bureau) failed to comply with the formal notice requirements of the Real Estate Tax Sale Law (Tax Sale Law or Law).[1] After careful review, we affirm.

## I. BACKGROUND

On February 9, 2024, Piuma filed in the trial court a timely petition to set aside the September 19, 2023 upset tax sale of the Property. In the petition, Piuma challenged, *inter alia*, whether the Bureau properly mailed the notice of the claim regarding the 2021 property taxes on the Property, whether the Bureau engaged in

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

reasonable efforts to determine Piuma's address after the initial notice of the tax sale was returned as undeliverable, and whether the Bureau had good cause to seek waiver from the personal service requirements under the Tax Sale Law. LI Bucks intervened, and the matter proceeded to a non-jury trial.

Prior to trial, the parties stipulated to the following facts. *See* Sept. 25, 2024 Notes of Testimony (N.T.) at 6, Reproduced Record (R.R.) 6 (trial court incorporating stipulated facts into the record). Piuma took ownership of the Property in 1976, and he did not change his mailing address with the Bucks County Board of Assessment (Board) during the duration of his ownership of the Property. Trial Stipulation, ¶¶ 2-3.[2] As of September 2023, Piuma owed $5,855.41 in property taxes on the Property for tax year 2021.[3] *Id.*, ¶ 4.

On July 19, 2023, the Bureau sent notice to Piuma—by United States Postal Service (USPS) certified mail, restricted delivery, return receipt electronic—that the Property would be included in the September 19, 2023 tax sale. *Id.*, ¶ 5. USPS attempted delivery of the certified mail notice to the Property and returned the mailed notice to the Bureau with the note of "Vacant" on July 31, 2023. *Id.*, ¶¶ 6-7.

In addition to the notice by certified mail, the Bureau posted notice of the tax sale at the Property and advertised the tax sale in three newspapers in August 2023. *Id.*, ¶¶ 13, 17. The Bucks County Sheriff's Office (Sheriff) further attempted to personally serve Piuma with notice of the sale at the Property on August 7, August 16, and August 17, 2023, but was unsuccessful in doing so. *Id.*, ¶ 12.

---

[2] The stipulation, which was not included in the reproduced record, appears at pages 95 to 97 of the original record transmitted by the trial court.

[3] While Piuma also owed property taxes for the 2022 tax year as of the date of the tax sale, the sale pertained only to his delinquent 2021 taxes. Trial Stipulation, ¶ 4; N.T. at 13-14, R.R. 13-14.

Following the return of the original July 19, 2023 certified mail notice, the Bureau conducted a search in the Accurint database maintained by LexisNexis. *Id.*, ¶¶ 8-9. Through the search, the Bureau discovered a second address where Piuma could potentially be found at 2413 State Road, Croydon, Pennsylvania (2413 State Road). *Id.*, ¶ 9. The Board's records listed Debra L. Piuma, Piuma's daughter, as the owner of 2413 State Road. *Id.*, ¶ 10.

On September 5, 2023, the Bureau filed in the trial court a petition for waiver of personal service for various properties to be sold at the September 19, 2023 tax sale, including the Property. *Id.*, ¶¶ 14-15. The court entered an order waiving personal service as to all properties noted in the petition on September 8, 2023. *Id.*, ¶ 16. On that same date, the Bureau mailed, via first class mail, notice of the impending tax sale to the Property and 2413 State Road. *Id.*, ¶ 11. On September 19, 2023, the Bureau sold the Property to LI Bucks. *Id.*, ¶¶ 18-19.

At trial, Kristin Nielsen (Nielsen), the Bucks County Deputy Treasurer who oversees tax sales performed by the Bureau, testified that after the July 19, 2023 certified mail notice was returned as undeliverable, the Bureau performed additional research to find other addresses where Piuma might be located. N.T. at 18, R.R. 18. The additional research included review of its own records and notes reflecting prior communications with Piuma, the files of the Bucks County Recorder of Deeds, Register of Wills, and Prothonotary, and a search of the Accurint database. *Id.* at 19-24, R.R. 19-24. The Accurint database search indicated that 2413 State Road was the "[p]robable current address" for Piuma, as it listed "Herman Piuma," "Herman A. Piuma," "Herman J. Piuma," "Herman J. Piuma 5," "Herman Piuma Jr.," and "V. Herman Piuma" residing at that address. Exhibit D-4, R.R. 131;[4] *see*

---

[4] Exhibit D-4, which includes the Accurint database search results, does not appear in the original record in this matter but is in the reproduced record. *See* R.R. 131-36. As there is no

3

*also* N.T., at 20, R.R. 20. Nielsen acknowledged on cross-examination that the date of birth associated with the "Herman Piuma" listed as residing at 2413 State Road was in 1980, four years after Piuma acquired the property. N.T. at 44-45, R.R. 44-45. The remaining sources consulted by the Bureau did not show any address for Piuma other than the Property. *Id*. at 19-24, R.R. 20-24.

Nielsen explained that Piuma contacted the Bureau in 2019, 2020, and 2022 regarding property tax delinquencies, which reflects that Piuma was receiving notices from the Bureau and paying the delinquent taxes. *Id*. at 24-26, R.R. 24-26. In addition, the Bureau sent a notice of tax delinquency for the 2022 tax year on April 28, 2023, which provided a warning about the September 19, 2023 tax sale and was delivered by USPS to the Property. *Id*. at 36-37, R.R. 36-37.

The records submitted by the Bureau at trial reflected that Deputy Sheriffs attempted to personally serve Piuma with notice of the sale at the Property at 4:15 p.m. on August 7, 2023, an unrecorded time on August 16, 2023, and 4:38 p.m. on August 17, 2023. Exhibit D-8, R.R. 137-38. Nielsen stated that because of the three failed personal service attempts, the Bureau authorized its solicitor to file a petition for waiver of personal service. N.T. at 31, R.R. 31; Exhibit D-9, R.R. 119-30.

With respect to the notice of claim for the 2021 taxes on the Property, Nielsen testified that the Bureau received a USPS return receipt form reflecting that an individual named "H. Piuma" signed for the notice of claim on May 31, 2022. N.T. at 32-34, R.R. 32-34; Exhibits D-17, D-18, R.R. 139-40. Nielsen acknowledged that

---

dispute to the accuracy and authenticity of the document contained in the reproduced record, we may consider it. *See Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (appellate court may consider document contained only within the reproduced record where the accuracy of the reproduction has not been disputed); *see also* Pa.R.A.P. 1921, Note (same). The remaining exhibits referenced in this opinion appear both in the reproduced record and in the original record as exhibits to the petition to set aside or the Bureau's answer to the petition.

the notice of claim reflected a mailing date of "6/30/2022," but she opined that this date was a clerical error and the notice was in fact mailed on May 30, 2022, because the tracking number on the return receipt form matched the number printed on the notice itself. N.T. at 105-08, R.R. 105-08; Exhibits D-17, D-18, R.R. 139-40.

Piuma testified that he purchased the property in 1976 and lived there through the date of the tax sale. N.T. at 66-67, R.R. 66-67. Piuma regularly paid his property taxes late in the years prior to 2023, often in response to notices of tax sales. *Id*. at 67-68, 78-80, 94-95, R.R. 67-68, 78-80, 94-95. Piuma received personal service at the Property as recently as August 2022, when the Property was included in the 2022 tax sale. *Id*. at 78, R.R. 78.

Piuma testified that the "H. Piuma" signature on the May 31, 2022 return receipt form reflecting receipt of the notice of claim for the 2021 tax year was not his and did not match is handwriting. *Id*. at 69-72, R.R. 69-72. Piuma asked his children who may have been at his house at that time whether they had signed for the notice, but he was unable to determine who had signed for it. *Id*. at 72, R.R. 72. Piuma stated that he did not recall receiving the notice of claim pertaining to his delinquent 2021 property taxes. *Id*. at 72-73, 100, R.R. 72-73, 100.

Piuma testified that he did not receive notice of the September 19, 2023 tax sale prior to the date of the sale. *Id*. at 68, 77-78, R.R. 77-78. According to Piuma, he spent most of the weekdays during summer 2023 at his daughter's house supervising his grandchildren pursuant to a Bucks County Children's Protective Services order. *Id*. at 73-77, R.R. 73-77. He regularly arrived at his daughter's house at 7:30 to 8:00 a.m. and would not return home until 6:00 p.m. or later, sometimes spending the night there. *Id*. at 76-77, 90, R.R. 76-77, 90. Piuma regularly checked the mailbox at the Property during the period he was supervising

5

his grandchildren. *Id*. at 83, R.R. 83. He did not know why the USPS marked the Property as vacant when attempting delivery in July 2023. *Id*. at 73, R.R. 73.

Piuma testified that 2413 State Road was his son's residence. *Id*. at 88, R.R. 88. Piuma shares the same name with his son, except Piuma is Herman Piuma IV, while his son is Herman Piuma V. *Id*. at 102, R.R. 102. Piuma first learned the Property was sold when his son passed along notice delivered to 2413 State Road after the sale occurred. *Id*. at 88-89, R.R. 88-89.

On October 4, 2024, the trial court issued a decision and order denying Piuma's petition to set aside tax sale and finding that the Bureau complied with the notice requirements of the Tax Sale Law. Piuma filed a timely appeal from the trial court's order.

In its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the trial court determined that the Bureau complied with Section 607.1(a) of the Tax Sale Law, 72 P.S. § 5860.607a(a),[5] by searching its own records, the records of the Board, Prothonotary, Recorder of Deeds, and the Accurint database. Trial Court Opinion at 5. The court noted that Accurint "was the only database that showed a probable address for [] Piuma other than" the Property. *Id*. (emphasis omitted). The court further found that the Bureau had good cause to petition for waiver of the personal service requirement pursuant to Section 601(a)(3) of the Law, 72 P.S. § 5860.601(a)(3), where Deputy Sheriffs attempted to serve Piuma three times at the Property without success and "[n]either the Bureau nor the Sheriff's Deputies could have known that [] Piuma would be at his daughter's home rather than his own." *Id*. at 7. Finally, the trial court held that Piuma could not now argue he did not receive notice of the 2021 tax claim as he had actual notice of the claim and did not bring a

---

[5] Added by the Act of July 3, 1986, P.L. 351.

6

challenge under the exclusive procedure set forth in Section 314(e) of the Law, 72 P.S. § 5860.314(e). *Id.* at 8-9.

## II. ISSUES ON APPEAL

Piuma raises three issues on appeal.[6] First, he argues that the trial court erred by finding that the Bureau undertook reasonable efforts to discover his whereabouts after the return of the July 19, 2023 certified mail notice. Next, Piuma contends that the court mistakenly concluded that the Bureau established good cause to obtain a waiver of the personal service requirements of the Tax Sale Law. Finally, he asserts that he properly raised a challenge to the service of the notice of claim in his petition to set aside, and the Bureau failed to perfect the underlying tax claim for the 2021 tax year due to its defective notice.

## III. DISCUSSION

### A. Reasonable Efforts

Piuma first argues that the Bureau failed to conduct reasonable efforts to discover his whereabouts under Section 607.1 of the Tax Sale Law after the initial certified mail notice was returned as undelivered. He asserts that "the Bureau mistakenly searched for [his] son" on the Accurint database, "and no search for [Piuma] was ever conducted." Piuma's Brief at 14. Piuma contends that had the Bureau acted reasonably, it would have realized that the Accurint search related to the wrong person and conducted a proper search for Piuma, rather than his son.[7]

---

[6] In tax sale cases, our review is limited to whether the trial court abused its discretion, erred as a matter of law, or rendered a decision lacking supporting evidence. *Pan Diners, Inc. v. Monroe Cnty. Tax Claim Bureau*, 337 A.3d 631, 634 n.7 (Pa. Cmwlth. 2025). The trial court has the exclusive authority to weigh the evidence, make credibility determinations, and draw reasonable inferences from the evidence presented. *Id.* Where the court's findings are supported by substantial evidence of record, this Court may not disturb those findings on appeal. *Id.*

[7] Before this Court, LI Bucks argues that the trial court found that Piuma had actual notice of the September 19, 2023 tax sale, which obviated any concern with respect to the Bureau's compliance with the notice provisions of the Tax Sale Law. However, the trial court did not

"The Tax Sale Law requires three different forms of notice to be given to an 'owner' prior to an upset tax sale: mail, publication, and posting."[8]  *Powell v. Luzerne Cnty. Tax Claim Bureau*, 352 A.3d 138, 143 (Pa. Cmwlth. 2026).  With respect to notice by mail, Section 602(e)(1) of the Tax Sale Law requires that the Bureau provide notice "[a]t least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner."  72 P.S. § 5860.602(e)(1).

In cases where the return receipt for the thirty-day certified mail notice is not received from each owner, the Bureau must send additional notice, by USPS first class mail with proof of mailing, at least ten days before the sale.  72 P.S. § 5860.602(e)(2); *see also Clemmer v. Fayette Cnty. Tax Claim Bureau*, 176 A.3d 417, 420 (Pa. Cmwlth. 2017).  Moreover, prior to the second mailing, the Bureau must undertake "reasonable efforts to discover the whereabouts of" any owner whose certified mail notice is returned without signature or where there is "a significant doubt as to the actual receipt of such notification."  72 P.S. § 5860.607a(a); *see also Clemmer*, 176 A.3d at 420-21.  Section 607.1(a) provides:

> The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.

---

expressly determine that Piuma had actual notice of the tax sale but instead found only that Piuma "testified without credibility that his son and daughter did not tell him about any tax sale notices they may have received."  Decision, ¶ 26 (unnecessary capitalization omitted).  We decline to infer from this credibility ruling that Piuma received actual notice of the sale.  As discussed *infra*, the trial court did find that Piuma had actual notice of the **claim** for the underlying 2021 property tax delinquency.

[8] As discussed further *infra*, the Tax Sale Law imposes the additional requirement of personal service prior to the sale of an owner-occupied property.

8

72 P.S. § 5860.607a(a). The examples listed in the statute constitute "the mandatory minimum search required by Section 607.1." *George v. Delaware Cnty. Tax Claim Bureau*, 323 A.3d 106, 111 (Pa. Cmwlth. 2024) (citation omitted). "When conducting additional notification efforts under this section, a tax claim bureau must use 'ordinary common sense business practices' to ascertain proper addresses where notice of the tax sale may be given." *Id*. (citation omitted).

The notice provisions of the Tax Sale Law must be strictly construed to prevent individuals from being deprived of their property without due process. *Horton v. Washington Cnty. Tax Claim Bureau*, 81 A.3d 883, 888 (Pa. 2013). If any of the types of notice identified in the Law is defective, the tax sale is void. *Powell*, 352 A.3d at 143. Further, the tax claim bureau bears the burden of proof that it complied with the Law's notice requirements. *In re Adams Cnty. Tax Claim Bureau*, 200 A.3d 622, 626 (Pa. Cmwlth. 2018).

Contrary to Piuma's argument on appeal, the record does not show that the Bureau searched for the wrong individual or conducted an incomplete review of the sources referenced in Section 607.1(a). Rather, the Bureau searched for an alternate address for Piuma in various public records—including the Recorder of Deeds, Register of Wills, Prothonotary, and its own records—as well as in the Accurint database, which incorporates law enforcement, government agency, and credit bureau records. N.T. at 19-24, 57, R.R. 19-24, 57. Specifically, in the Accurint database, the Bureau searched for Piuma by name which returned results for several similar names—"Herman Piuma," "Herman A. Piuma," "Herman J. Piuma," "Herman J. Piuma 5," "Herman Piuma Jr.," and "V. Herman Piuma"—associated with a property at 2413 State Road. Exhibit D-4, R.R. 131. Nielsen testified that 2413 State Road was the only other address revealed in any of the sources. *Id*. at

22-24, R.R. 22-24. The Bureau accordingly sent the final notice of the tax sale on September 8, 2023, to both the Property and 2413 State Road. N.T. at 26, R.R. 26; Trial Stipulation, ¶ 11.

That Piuma's daughter owned 2413 State Road and Piuma's son lived there do not affect our analysis. The "outcome" of a tax claim bureau's search has "no bearing on [a] court's final decision because it is the reasonableness of the effort that is important, not whether it would have led to discovery of [another] address." *Rice v. Compro Distrib., Inc.*, 901 A.2d 570, 577 (Pa. Cmwlth. 2006). Notwithstanding the fact that the Accurint search returned results for Piuma's son, rather than Piuma himself, the evidence supports a conclusion that the Bureau undertook a good-faith effort to locate an alternate address for Piuma. Moreover, Piuma has not identified another address the Bureau should have located during its search, as he testified that he continued to reside at the Property through the date of the tax sale.

The Bureau here presented evidence at trial showing that it exercised "ordinary common sense business practices" by identifying an alternate address in the Accurint database associated with an individual with a near identical name to Piuma. *George*, 323 A.3d at 111 (citation omitted). The Bureau then sent final notice of the tax sale to the Property and this alternate address, in accordance with the Tax Sale Law. 72 P.S. § 5860.602(e)(2). As there is no dispute that the Bureau otherwise searched the sources identified in Section 607.1(a), the trial court properly found that the Bureau complied with the "reasonable efforts" requirement of the statute. 72 P.S. § 5860.607a(a).

### B. Good Cause

Piuma next argues that the Bureau did not satisfy the good cause standard for waiver of the personal service requirement of Section 601(a)(3) of the Tax Sale Law.

He asserts that the Bureau omitted certain pertinent information in its September 5, 2023 petition for waiver of personal service, including the Bureau's allegedly faulty records search identifying an incorrect address, Piuma's longtime residence at the Property, and his receipt of personal service there as recently as August 2022. Piuma further argues that the Sheriff's three service attempts were insufficient to show good cause, where the attempts were only on weekdays, with two attempts at the same time of the day and the third at an undetermined time.

When a property included in a tax sale is occupied by an owner, Section 601(a)(3) requires that the tax claim bureau personally serve notice on each owner. 72 P.S. § 5860.601(a)(3); *see also In re Consol. Reports & Return by Tax Claims Bureau of Northumberland Cnty. of Props.* (*Neff*), 132 A.3d 637, 645 (Pa. Cmwlth. 2016) (*en banc*) ("The requirements of Section 601(a)(3) are cumulative and apply in addition to the tax claim bureaus' obligations to provide notice through publications, posting, and mail."). The statute provides:

> No owner-occupied property may be sold unless the bureau has given the owner occupant written notice of such sale at least ten (10) days prior to the date of actual sale by personal service by the sheriff or his deputy or person deputized by the sheriff for this purpose unless the county commissioners, by resolution, appoint a person or persons to make all personal services required by this clause. The sheriff or his deputy shall make a return of service to the bureau, or the persons appointed by the county commissioners in lieu of the sheriff or his deputy shall file with the bureau written proof of service, setting forth the name of the person served, the date and time and place of service, and attach a copy of the notice which was served. If such personal notice cannot be served within twenty-five (25) days of the request by the bureau to make such personal service, the bureau may petition the court of common pleas to waive the requirement of personal notice for good cause shown.

72 P.S. § 5860.601(a)(3).

"Thus, without receiving a waiver from a trial court, a tax claim bureau may not sell an owner occupied property absent personal notice to an owner-occupant because actual notice of the tax sale does not waive strict compliance with the personal service requirements of Section 601(a)(3)." *Neff*, 132 A.3d at 646. While good cause is undefined in the Tax Sale Law, Pennsylvania courts stated that it requires a "substantial reason, one that affords a legal excuse." *Id*. at 650 (citation omitted). What constitutes good cause depends on the facts and circumstances of each case and is entrusted to the sound discretion of the trial court. *Id*.; *see also Famageltto v. Cnty. of Erie Tax Claim Bureau*, 133 A.3d 337, 347 (Pa. Cmwlth. 2016) (*en banc*).

While Piuma argues that the Bureau did not plead all the necessary information to the trial court in its petition for waiver of personal service, this Court has held that the reviewing judge may make an initial determination of good cause based on "the averments in the [w]aiver [p]etition and the attachments thereto, which are clothed in a presumption of regularity that attaches to all official acts." *Famageltto*, 133 A.3d at 348 (holding waiver petition, which included only general facts pertaining to 1,700 properties, was not facially defective and trial court did not abuse its discretion in finding good cause "given the presumption of regularity that attaches to the [b]ureau's activities"). "It is not until [the filing of the petition to set aside], in the context of the adversarial proceeding, that evidence can be presented and tested[ and] a determination as to whether there was in fact good cause to waive the personal service of notice requirement for that property should be made, at the same time all the other notice requirements are tested." *Id*. Therefore, we confine our analysis to the question of whether the Bureau established good cause for waiver of the personal service requirement at trial on Piuma's petition to set aside.

12

In *Neff*, this Court rejected the objector's argument that a tax claim bureau must attempt personal service of notice of a tax sale after normal work hours or on a weekend. *Neff*, 132 A.3d at 648, 651. Instead, we concluded that the bureau demonstrated good cause under Section 601(a)(3) where it attempted service "on three different [week]days at three different times of day" and demonstrated compliance with the notice requirements of Section 602. *Id.* at 651. This Court has also held that the bureau met the good cause standard based on (i) two service attempts, the first on a weekday and the second during the weekend, at different times of day and (ii) three attempts over two consecutive weekdays, with attempts on one of the days in the morning and afternoon. *Johnson v. Greene Cnty. Tax Claim Bureau* (Pa. Cmwlth., No. 266 C.D. 2022, filed Jan. 16, 2024), 2024 WL 158416, slip op. at 10; *Crespo v. Lehigh Valley Tax Claim Bureau* (Pa. Cmwlth., No. 1169 C.D. 2016, filed Jan. 5, 2017), 2017 WL 56120, slip op. at 7.[9] By contrast, we have found that a tax claim bureau did not demonstrate good cause when it made only one, mid-day attempt at personal service on an owner. *Gutierrez v. Washington Cnty. Tax Claim Bureau*, 260 A.3d 291, 297-98 (Pa. Cmwlth. 2021).

Here, the Bureau presented evidence that Deputy Sheriffs attempted service on Piuma at the Property on three dates: Monday, August 7, 2023, at 4:15 p.m.; Wednesday, August 16, 2023, at an unrecorded time; and Thursday, August 17, 2023, at 4:38 p.m. Exhibit D-8, R.R. 137-38. The Bureau put forth additional evidence demonstrating that it complied with the mail, posting, and publication notification requirements of Section 602 and undertook reasonable efforts to discover Piuma's whereabouts following the return of the certified mail notice

---

[9] Unreported panel decisions of this Court issued after January 15, 2008, may be cited as persuasive authority. *See* Commonwealth Court Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a).

pursuant to Section 607.1. While courts look to the times of day and days of the week when service is attempted as relevant factors, our caselaw does not establish any bright-line rules and affords substantial deference to the trial court in determining whether good cause was shown. *Neff*, 132 A.3d at 650. Given that the Bureau attempted personal service over an eleven-day period on three separate days of the week and demonstrated its compliance with the Tax Sale Law's other notice requirements, we conclude that the trial court did not abuse its discretion in finding that there was good cause to waive personal service on Piuma. *Id.*

### C. Notice of Tax Claim

Finally, Piuma argues that the Bureau failed to perfect the claim regarding the 2021 property taxes on the Property, which served as the basis for the September 19, 2023 tax sale. Pursuant to Section 308(a) of the Tax Sale Law, 72 P.S. § 5860.308(a), the tax claim bureau must provide notice of the return and entry of claim of real estate taxes by mail prior to July 31 of the applicable tax year.[10] This Court has held that a tax sale must be set aside where the tax claim bureau fails to strictly comply with the notice provision of Section 308. *Boehm v. Barnes*, 437 A.2d 784, 785-86 (Pa. Cmwlth. 1981). Piuma's challenge focuses on the fact that the notice of claim mailed by the Bureau indicates a mailing date of "6/30/2022," while the USPS return receipt form indicates the notice was signed by an "H. Piuma"

---

[10] Section 308(a) of the Tax Sale Law provides:

> Not later than the thirty-first day of July of each year, the bureau shall give only one notice of the return of said taxes and the entry of such claim in one envelope for each delinquent taxable property, by United States registered mail or United States certified mail, return receipt requested, postage prepaid, addressed to the owners at the same address listed on the form returned by the tax collector for taxes that are delinquent.

72 P.S. § 5860.308(a).

nearly one month prior, on May 31, 2022. Exhibits D-17, D-18, R.R. 139-40. Piuma further notes his trial testimony that the signature on the return receipt form was not his and he did not receive actual notice of the tax claim. N.T. at 69-73, R.R. 69-73.

As noted above, the trial court found that Section 314(e) of the Tax Sale Law constitutes the exclusive remedy to challenge the lack of notice of tax claims and Piuma could not raise the issue in the context of his petition to set aside brought under Section 607(d) of the Law, 72 P.S. § 5860.607(d). Trial Court Opinion at 8-9. Pursuant to Section 314(e),

> [no] taxpayer shall have the right to proceed by petition to the court of common pleas to open a claim absolute under the provisions of this act, except on the ground of payment of the tax involved or failure to receive notice. **The remedy provided by this section to contest a tax claim entered shall be deemed exclusive except as herein otherwise provided**.

72 P.S. § 5860.314(e) (emphasis added). Section 607(d) in turn states:

> **Any objections or exceptions to such a sale may question the regularity or legality of the proceedings of the bureau in respect to such sale, but may not raise the legality** of the taxes on which the sale was held, of the return by the tax collector to the bureau or **of the claim entered**.

72 P.S. § 5860.607(d) (emphasis added).

In *Zelno v. Lyons*, 245 A.3d 1185 (Pa. Cmwlth. 2021), on which the trial court relied in finding Piuma was barred from challenging notice of the 2021 tax claim, the tax claim bureau mailed notice of the claim for Zelno's 2016 real estate taxes in April 2017, but the notice was returned to the bureau unsigned. *Id*. at 1186. Prior to the tax sale the following year, the bureau fulfilled its notice obligations under Section 602 of the Tax Sale Law and completed personal service on Zelno. *Id*. After Zelno's property was sold in September 2018, she filed a petition to set aside the

sale, arguing that she did not receive notice of the underlying delinquency claim and therefore it did not become absolute. *Id*.

This Court noted in *Zelno* that Section 314(e) of the Law, by its "plain language[, . . .] constitutes the exclusive remedy for challenging the failure of notice of tax claims." *Id*. at 1188. Moreover, we explained that, through Section 607(d), the legislature "limited challenges to tax sales by the [b]ureau to owners or lien creditors of the real estate and then limited them only to filing objections or exceptions to the 'regularity or legality of the proceedings of the bureau in respect to such sale.'" *Id*. at 1187 (quoting *In re Consol. Return of Sale of Properties by Westmoreland Cnty. Tax Claim Bureau (Yardley)*, 646 A.2d 751, 754 (Pa. Cmwlth. 1994)); *accord In re Upset Sale, Tax Claim Bureau of Tioga Cnty. (Ostapowicz)*, 349 A.3d 933, 946, 950 (Pa. 2026). We observed that "despite actual notice of the impending tax sale at least as early as July 2018 when personal service of the notice of tax sale was completed, Zelno failed to challenge lack of notice of the tax claim under Section 314(e) or simply pay the taxes due and owing." *Zelno*, 245 A.3d at 1187. Therefore, Zelno was barred from seeking "to upend an otherwise valid tax sale and challenge lack of notice of the tax claim outside the exclusive statutory framework for doing so." *Id*. at 1188; *see also Pan Diners*, 337 A.3d at 637 (noting that *Zelno* drew "a clear distinction between procedures challenging tax claims from those governing tax sales"); *but cf. AES Drilling Fluids, LLC v. Clearfield Cnty. Tax Claim Bureau* (Pa. Cmwlth., No. 583 C.D. 2023, filed June 9, 2025), 2025 WL 1618069, slip op. at 9-13 (addressing merits of property owner's argument—raised in objections to tax sale—that tax claim bureau did not perfect tax claim on property, where bureau did not produce certified mail receipt for notice of tax claim and did not prove owner had actual notice of impending tax sale).

Piuma argues that *Zelno* is distinguishable as there was actual notice of the tax sale in that case, while here he did not receive notice of the tax sale or the tax claim and therefore did not have the opportunity to challenge the claim under the procedure contemplated by Section 314(e). We agree with Piuma in part, as the trial court did not find he had actual notice of the impending September 19, 2023 tax sale, unlike *Zelno*. However, the trial court here determined that Piuma had actual notice of the tax claim itself based on the signed and dated USPS return receipt form. *See* Trial Court Opinion, at 8-9 (stating that the evidence presented at trial demonstrated that "Piuma signed or someone at the [] Property signed for [him] and accepted delivery of the" notice of claim, showing "Piuma had actual notice of the outstanding taxes past due and failed to file any exceptions to the tax claim prior to the claim becoming absolute") (emphasis omitted). While Piuma points to the discrepancy between the mailing date of the notice of claim and the return receipt form as indicative of the notice's defectiveness, the trial court accepted Nielsen's testimony that the date on the notice was a clerical error and found that the Bureau in fact mailed the notice to the Property on May 30, 2022 and it was delivered and signed for the next day. *See id*. at 8; *see also* N.T. at 105-08, R.R. 105-08; Exhibits D-17, D-18, R.R. 139-40. As the trial court's factual findings and credibility determinations are supported by substantial evidence, we may not disturb them on appeal. *Pan Diners*, 337 A.3d at 634 n.7.

Accordingly, *Zelno* applies with equal force here: because Piuma received actual notice of the tax claim on May 31, 2022, he was required to challenge the validity of the notice under the exclusive statutory framework of Section 314(e) and could not defer raising the challenge until the petition to set aside the tax sale. *Zelno*,

17

245 A.3d at 1187-88. Therefore, the trial court properly found that it could not consider the merits of Piuma's challenge to the notice of the tax claim.

## IV. CONCLUSION

For the reasons set forth above, we affirm the trial court's decision and order, which denied Piuma's petition to set aside the September 19, 2023 tax sale of the Property.

_____
STELLA M. TSAI, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Herman Piuma,                  :
     Appellant           :
                              :
     v.                     :
                              :
Bucks County Tax Claim Bureau  :
and LI Bucks, LLC          :  No. 1513 C.D. 2024

## **O R D E R**

AND NOW, this 4th day of May, 2026, the October 4, 2024 order of the Court of Common Pleas of Bucks County is hereby AFFIRMED.

_____
STELLA M. TSAI, Judge